[No. 18196.    In Bank.—June 28, 1894.]

WILLIAM  S.  KENDALL,  RESPONDENT,  v.  J.  A. PARKER ET AL., DEFENDANTS, J. F. HILL, APPEL-LANT.

NON-NEGOTIABLE NOTE—STIPULATION FOR ATTORNEY'S FEE.—A note con-taining a stipulation for an attorney's fee, in case of suit thereon, is not negotiable.

ID.—DEFINITION OF PROMISSORY NOTE—CONTINGENT ADDITIONS.—A prom-issory note is a written engagement to pay absolutely and uncondi-tionally a certain sum of money, whether the note be negotiable or non-negotiable; and an instrument is not a promissory note when there are contingent additions thereto.

ID.—INDORSEMENT IN BLANK—LIABILITY OF INDORSER TO SECOND INDOR-SEE.—When the payee of a non-negotiable note, having a stipulation for an attorney's fee, in case of suit, transfers the same by simply indorsing it in blank, he does not become liable as an indorser to the indorsee of his indorsee.

ID.—CONDITIONAL GUARANTY.—Independently of statute law there is no custom or rule of law which can add a conditional guaranty of pay-ment to the assignment in blank of a non-negotiable note.

APPEAL from a judgment of the Superior Court of Sacramento County.

The facts are stated in the opinion of the court.

*L. T. Hatfield,* for Appellant.

The instrument sued on is not an unconditional promise to pay a certain amount of money, and is there-fore not a negotiable promissory note. (Civ. Code, sec. 3088, 3093; *Adams* v. *Seaman,* 82 Cal. 637; *First Nat. Bank* v. *Falkenhan,* 94 Cal. 141.) Section 1459 of the Civil Code, so far as this case is concerned, simply authorizes the transfer of the contract, the provisions for the protection of the maker having no application in this action by the indorsee of an indorsee against the original payee. (*First Nat. Bank* v. *Falkenhan,* 94 Cal. 145.) A mere contract of sale, or agreement to sell, does not imply a warranty. (Civ. Code, sec. 1764; *Sutro* v. *Rhodes,* 92 Cal. 123, 124; *First Nat. Bank* v. *Falkenhan,* 94 Cal. 144; *James* v. *Yaeger,* 86 Cal. 187,

188.) No rule of law is better settled than that an indorsee of choses in action, or non-negotiable instruments, or the indorsee of an indorsee, cannot recover from any one but his immediate indorser, and then only in cases clearly within the doctrine of the Civil Code, section 1774. (Addison on Contracts, 8th ed., appendix, 251; *Woods* v. *North*, 84 Pa. St. 407; 24 Am. Rep. 201; *Johnston* v. *Speer*, 92 Pa. St. 227; 37 Am. Rep. 675.) Any contract for the payment of money represents an indebtedness, and the assignment of it, if non-negotiable, simply transfers the title to the debt, but nothing more. (Civ. Code, sec. 1459; *First Nat. Bank* v. *Falkenhan*, 94 Cal. 145.)

*Johnson, Johnson & Johnson*, for Respondent.

The transfer of a non-negotiable instrument is some thing more than a mere contract of sale, and the rules applicable to negotiable paper, to some extent, apply to such assignment. (*First Nat. Bank* v. *Falkenhan*, 94 Cal. 141.) Although at common law the plaintiff could not sue the defendant Hill, because there was no privity between them, yet equity has always recognized the rights of subsequent indorsees of non-negotiable notes. (Story on Promissory Notes, sec. 128; Randolph on Commercial Paper, sec. 1.) An indorsement in blank of a non-negotiable instrument by the payee thereof, subjects him to even greater liability than an indorsement to order or to a particular person. (*Richards* v. *Warring*, 1 Keyes, 576; *Wareham Bank* v. *Lincoln*, 3 Allen, 192; *Codwise* v. *Gleason*, 3 Day, 12; Story on Bills, sec. 202; Chitty on Pleading, 183, 226; 2 Parsons on Bills and Notes, 119; *Poorman* v. *Mills*, 35 Cal. 121; 95 Am. Dec. 90; Story on Promissory Notes, 165.)

The COURT.—This is an appeal from a judgment entered after appellant's demurrer had been overruled, appellant standing upon his demurrer.

The complaint is upon a promissory note which is non-negotiable, because it contains a stipulation for an

attorney's fee.   Suit is brought by the assignee of the first assignee against the makers and the payee as indorser.

The complaint avers that Hill assigned the note by writing his name upon the back thereof, and by delivering the same to the Huntington-Hopkins Company before the maturity of the note.

The Huntington-Hopkins Company, upon the maturity of the note, presented the same to the makers, and demanded payment thereof.   The said makers refused and failed to pay the same or any part thereof, of which demand and failure due notice was given to the defendant Hill.   The note was transferred to plaintiff by the Huntington-Hopkins Company, without recourse and after maturity.

The complaint was demurred to on several grounds, all, however, founded upon the proposition that the complaint fails to show any liability on the part of Hill.

Plaintiff had judgment, not only for the debt which the note was given to secure, but for one hundred dollars, attorney's fee.   The stipulation in regard to an attorney's fee in the note is: "And in case suit is instituted to collect this note, or any portion thereof, we, or either of us, promise to pay such additional sum as the court may adjudge reasonable as attorney's fees in said suit."

The question here presented is, whether, when the payee of a non-negotiable note transfers the same by a simple indorsement in blank, he becomes liable as the indorser of a negotiable note would, not only to his immediate indorsee, but to the indorsee of his indorsee, the second indorsement being also in blank; or, as in this case, "without recourse."

It was held in England, prior to the statute of 3 and 4 Anne, that by the custom of merchants, when the payee indorsed his name upon a negotiable note, intending thereby to transfer it, the indorsee was at liberty to

write over the signature not only an assignment, but a conditional guaranty of payment.

The law thus made for the indorser of such a paper, a contract not expressed, and which, independently of the law, there was nothing in the nature of the transaction to indicate. Independently of statute law, there is no custom or rule of law which can add such a condition to the assignment of a non-negotiable note. In many states, however, there are statutory provisions on the subject.

In 1850 the legislature of this state passed an act in regard to bills of exchange and promissory notes (Stats. 1850, p. 247), the first and fourth sections of which are as follows:

"All notes in writing, made and signed by any person, whereby he shall promise to pay to any other person, or to his order, or to the order of any other person, or unto the bearer, any sum of money therein mentioned, shall be due and payable as therein expressed, and shall have the same effect and be negotiable in like manner as inland bills of exchange, according to the custom of merchants.

"The payees and indorsees of every such note, payable to them or their order, and the holders of every such note payable to bearer, may maintain actions for the sums of money therein mentioned, against the makers and indorsers of the same, respectively, in like manner as in cases of inland bills of exchange, and not otherwise."

In *Hamilton* v. *McDonald*, 18 Cal. 128, this court had occasion to consider the liability of an indorser of a non-negotiable promissory note, as affected by that act.

There, as here, the action was against the first indorser by the indorsee of the first indorsee. It was contended that the action could not be maintained for want of privity. The court said:

" The answer to this objection is to be found in the provisions of the statute regulating the rights and liabilities of the parties. The fourth section of the act of

April, 1850, relative to bonds, due bills, etc., makes every assignor of a non-negotiable note liable upon his assignment to the assignee of such note, and it is evident from the language used that it was not the intention to limit this liability to his immediate assignee. The rule at common law was that, as between the assignor and his immediate assignee, the assignment created the same liabilities and obligations on the part of the assignor as the indorsement of a negotiable note created on the part of the indorser. But in respect to subsequent holders, no privity or connection existed between them and the assignor, unless expressly created by the assignment, and where this was not done the immediate assignee was the only person who could maintain an action in his own name against the assignor. The statute places the subsequent holder upon the same footing with the original assignee, and gives him a right of action against every person from whom the instrument has passed by assignment."

It is claimed that this statute was repealed by the code, and a very different rule established. At common law, however, although the subsequent holder could only sue his immediate indorser, in his own name, he could sue the more remote indorser at law in the name of his assignor, or could obtain relief against them in equity in his own name. (Story on Promissory Notes, sec. 128.)

Whether the statute of 1850 is repealed or not under our practice, it cannot be doubted that such holder may still sue in his own name, if the liability of such indorser is admitted.

It may be remarked here that neither under the statute of 1850, nor at common law, would the instrument sued upon be considered a promissory note at all. Under the act of 1850 the note was required to be for the payment of a sum of money therein mentioned.

According to Blackstone, a promissory note was an engagement in writing to pay a sum specified. (2 Blackstone's Commentaries, 467.)

Story says it is a written engagement to pay absolutely and unconditionally a certain sum of money (Story on Promissory Notes, sec. 1); and the author expressly shows that the definition applies both to negotiable and non-negotiable notes. (Sec. 3. See, also, Byles on Bills, 5–41; Chitty on Bills, 548; 3 Kent's Commentaries, 74.)

The instrument is not a promissory note when there may be contingent additions. (*Smith* v. *Nightingale*, 2 Stark. 330; Civ. Code, 3244.)

The note involved in *Hamilton* v. *McDonald*, 18 Cal. 128, had all the elements of a negotiable note, except that it was not payable to bearer or to order. But has the code made no change in this matter? Section 3087 of the Civil Code defines a negotiable instrument as "a written promise or request for the payment of a certain sum of money to order or bearer in conformity to the provisions of this code," and all the provisions of the code in relation to the liability of drawers and indorsers, and in reference to demand, notice, and protest, are expressly limited to such instruments.

Moreover, section 1774 of the Civil Code defines what liabilities one incurs who sells, or agrees to sell, other choses in action. Originally, this section contained a further provision, which was stricken out in 1874, that such seller thereby warrants the instrument to be what it purports to be, and to be binding according to its purport upon all the parties thereto.

Some of the liabilities created by this section are identical with those created by section 3116 of the Civil Code as to the parties to the assignment of negotiable paper, and others are evidently in lieu of them. In view of these sections, can it be said that the rule established by the act of 1850 is still in force? *First Nat. Bank* v. *Falkenhan*, 94 Cal. 141, is cited as authority for the judgment entered in this case. That action was brought by the first indorsee against his immediate indorser, and the note was indorsed with an express waiver of protest. This was held to be an indication

that the indorser expected to be held as a guarantor. The writer quotes a rule laid down in 1 American Leading Cases, to the effect that a mere indorsement is but a transfer of the note, and whether any and what liability is incurred by the transfer by indorsement and delivery of such a note will depend upon the intention of the parties and the circumstances of the transaction.

It is expressly stated that this rule is sufficient for the case in hand. What follows in regard to an alleged further rule upon the subject must be regarded as *obiter*. The case does not support the position of respondent.

The judgment against Hill is reversed, and the court directed to sustain the demurrer to the complaint.