[Civ. No. 1016.   Third Appellate District.—December 12, 1912.]

MARIA NASSANO, Appellant, v. TUOLUMNE COUNTY BANK and N. T. McCOWN, as Administrator of the Estate of Louis Zanone, Deceased, Respondents.

CHECK OR ORDER ON BANK—VALUABLE CONSIDERATION—PAYMENT BEFORE OR AFTER DEATH—REFUSAL AFTER DEATH—RECOVERY OF CLAIM AGAINST ESTATE.—Where a check or written order on a bank, duly authenticated by the maker, stated: "You are hereby authorized to pay out of the funds I now have in your bank, for a valuable consideration, which I have received, five hundred dollars to Mrs. Maria Nassano, or her order, prior to my death, if countersigned by me

across the back, or on due notification of my death, without such counter signature", and the same was first presented to the bank after the maker's death, and payment thereof was refused, the payee is entitled to recover the amount thereof as a claim against the estate of the deceased maker. In effect, there was an obligation that the drawer's estate would pay if the bank refused.

ID.—EFFECT OF CHECK PAYABLE AFTER DEATH—WANT OF EQUITABLE ASSIGNMENT OF FUND — OBLIGATIONS OF DRAWEE AS INDORSER—NEGOTIABLE BILL OF EXCHANGE—WARRANTY OF PAYMENT.—A check payable before or after death of the drawer, does not operate as an equitable assignment of the funds of the drawer in bank without being presented for payment. But, being payable after the death of the drawer, upon presentation of the check to the bank upon which it was drawn, the obligations of the drawer are the same as those of the first indorser of any other negotiable instrument, viz., that unless the indorsement is qualified, the indorser warrants to every subsequent holder who is not liable to him, that if the instrument is dishonored, the indorser will pay the same with interest.

ID.—DEATH OF DRAWER NOT A REVOCATION OF AUTHORITY OF BANK TO PAY CHECK—VESTED RIGHTS OF CHECKHOLDER.—The death of the drawer of the check could not revoke the authority of the bank to pay the check, which was negotiable, in form, and recites a valuable consideration, which is also presumed to exist. The death of the drawer of an ordinary bill of exchange does not revoke it. There is no principle of law which allows the death of the drawer of a check to affect the rights of a checkholder who has given value for the check, and who has a vested interest therein.

ID.—CHECK NOT AN ATTEMPT AT TESTAMENTARY DISPOSITION—RECOVERABLE OBLIGATION.—The check cannot be regarded as an attempt at a testamentary disposition of property; but it is a valid and binding obligation, upon which the plaintiff may recover.

APPEAL from a judgment of the Superior Court of San Joaquin County rendered upon demurrer sustained without leave to amend. C. W. Norton, Judge.

The facts are stated in the opinion of the court.

A. H. Carpenter, for Appellant.

J. B. Curtin and Geo. F. McNoble, for Respondents.

CHIPMAN, P. J.—It is alleged in the complaint that, on November 18, 1911, Louis Zanone had on deposit in defendant

bank one thousand one hundred dollars, subject to his order; on said date, Zanone, for good and valuable consideration, made and delivered to plaintiff "his promissory note, obligation and order upon said defendant bank . . . in words and figures as follows: 'Stockton, Calif., November 18, 1911. Cashier of Tuolumne County Bank, Sonora, Cal. You are hereby authorized to pay out of the funds I now have in your bank and for valuable considerations, which I have received, five hundred dollars to Mrs. Maria Nassano, or her order, said sum to be paid upon the presentation of this order prior to my death, if countersigned by me across the back, or on due notification of my death without such counter signature. In witness whereof, I hereby set my name on the day and at the place first mentioned above, in the presence of two witnesses. (Signed) Louis Zanone. G. Villiborghi, witness. Luigi Pomponio, witness.' "   (Acknowledged before a notary.); "that said order was not presented to said defendant bank for payment in the lifetime of the said Louis Zanone"; that, on or about February 10, 1912, plaintiff presented said order or caused the same to be presented, to the said defendant bank for payment, together with due proof that said Louis Zanone had died on the nineteenth day of December, 1911; that said bank refused payment, although it "had then and there and at all times the full amount of the said Louis Zanone's money in its hands or under its control wherewith it could have fully paid said order"; that said Zanone died intestate, about December 19, 1911, in the county of San Joaquin and left an estate therein "of more than eleven hundred dollars cash in the hands of the said Tuolumne County Bank," which "it held subject to his order therefor."

It is further shown that, on January 8, 1912, defendant Mc-Cown was duly appointed administrator of the estate of Zanone, deceased; that, within the time appointed for the presentation of claims against said estate, plaintiff presented to said administrator her written claim, duly verified by her oath, based on said "note, obligation and order" and that said administrator disallowed payment thereof on the fifteenth day of April, 1912.

The claim presented to the administrator, as shown in the complaint, is in the following form:

"In the Matter of the Estate of Louis Zanone, Deceased. The undersigned, a creditor of Louis Zanone, deceased, presents her claim against the estate of said deceased, for approval, as follows, to wit:

"Estate of Louis Zanone, Deceased,
            "To Maria Massano,                        Dr.
"To principal sum of order and agreement..........$500.00
"To interest on same, from November 18th, 1911, at
      seven per cent per annum to date............  12.50
                                                    ——————
                                              "$512.50

"Said agreement and order was made and given, for a valuable consideration, on the Tuolumne County Bank, of Sonora, Cal., and was drawn against the funds on deposit therein; and is in words and figures as follows:" (Then follows a copy of the instrument set out in the complaint.)
                      "(Signed)   Maria Nassano.
    "Subscribed and sworn to before me this 30th day of March, 1912.
"(Notarial Seal)                        A. H. Carpenter,
                      "Notary Public in and for San Joaquin
                          County, State of California."

It is averred in the complaint that demand was made for "payment of said claim, note, obligation or order, but the said defendants have at all times refused and still continue to refuse to allow or pay the same . . . although said defendants have in their hands sufficient money belonging to said deceased, after deducting therefrom all the costs and expenses of administration of said estate, to more than pay the same; and the said note, obligation, order, or claim hereinbefore set forth, together with the interest accrued thereon, is disallowed, rejected, wholly unpaid, and due and owing to plaintiff from said defendants." It is also alleged that said Zanone "left no wife, child, father, mother, sisters or brothers in the said county of San Joaquin or elsewhere to the knowledge of plaintiff." The prayer is for "judgment against said defendants for the sum of five hundred dollars," together with interest to the entry of judgment.

The complaint was demurred to by defendant administrator on the grounds following: 1. That the court has no jurisdiction of defendant McCown as administrator of said estate;

2. That there is a misjoinder in this, that the Tuolumne County Bank alone, if any person, should be made defendant; 3. "That the complaint does not state facts sufficient to constitute a cause of action for the reason that the instrument set out in the complaint . . . shows on its face that it is an attempted testamentary disposition of property by means of an improperly executed will"; 4. That the complaint is ambiguous and uncertain because "it is impossible to determine whether said instrument is pleaded as a note, an obligation, or an order or either or all," nor can it be ascertained from the complaint "whether the said instrument is a promissory note, an obligation or an order upon a bank for the payment of money."

It is stated as grounds of demurrer by defendant bank that it appears from the complaint that said instrument was not presented to said bank for payment "during the lifetime of Zanone and that Zanone died on the 19th day of December, 1911, and that said check or order was presented to Tuolumne County Bank on the 10th day of February, 1912, and by reason of the death of said Louis Zanone said bank could not lawfully pay said check or order" and that said bank is improperly joined as a defendant in the action with the administrator of said estate who "is entitled to the possession of all the estate of said deceased and that defendant the bank could not pay any claim against said estate to any one."

The demurrer was sustained without leave to amend and judgment dismissing the action was entered, from which plaintiff appeals.

In her complaint the plaintiff seems unable definitely to characterize the instrument sued on and, therefore, describes it as "a promissory note, obligation and order on said bank." The instrument is not a promissory note, for the signer does not promise "to pay a specified sum of money." (Civ. Code, sec. 3244; *Kendall* v. *Parker,* 103 Cal. 319, 324, [42 Am. St. Rep. 117, 37 Pac. 401].) "A check is a bill of exchange drawn upon a bank or banker, or a person described as such on the face thereof, and payable on demand, without interest." (Civ. Code, sec. 3254.) "A bill of exchange is an instrument, negotiable in form, by which one, who is called the drawer, requests another, called the drawee, to pay a specified sum of money." (Civ. Code, sec. 3171.)

The instrument resembles a check when reduced to its essential elements. It is an order on the Tuolumne County Bank to pay a specified sum to the payee "if countersigned across the back" by the drawer and presented in his lifetime, and if presented after his death then to pay without being countersigned. Regarding it as a check on the bank it did not operate as an equitable assignment of so much of the drawer's funds as he had in the bank at that time without being presented for payment. (*Donohoe-Kelly Banking Co.* v. *Southern Pacific Co.*, 138 Cal. 184, [94 Am. St. Rep. 28, 71 Pac. 93].) In the same volume, [138 Cal.] at page 169, [94 Am. St. Rep. 19, 66 Pac. 740, 71 Pac. 83], in the case of *Pullen* v. *Placer County Bank,* the question is also very fully discussed. The rule enunciated in both cases is that a check does not operate as an assignment of the money for which it was drawn and until the check is presented no property right in the fund passes to the payee by virtue of the check. In *Pullen* v. *Placer County Bank,* and in like cases, there was no contract with or promise made to the payee and no consideration to support the instrument. The claim that the death of Zanone revoked the authority of the bank to pay the check is not supported by the Pullen case, in which the check was a gift.

We have seen that a check is a bill of exchange. "The rights and obligations of the drawer of a bill of exchange are the same as those of the first indorser of any other negotiable instrument." (Civ. Code, sec. 3177.) "Every indorser of a negotiable instrument, unless his indorsement is qualified, warrants to every subsequent holder thereof, who is not liable thereon to him; . . . Fourth. That if the instrument is dishonored, the indorser will . . . pay the same with interest . . . " (Civ. Code, sec. 3116.) Mr. Daniels cites several cases where it has been held that notes made payable "after a man's death," or "to be allowed at my decease," or a provision to pay "on demand after my decease," or "one day after date or at my death," are good negotiable notes. (1 Daniels on Negotiable Instruments, sec. 46, 5th ed.) The instrument in question is negotiable in form and comes under the classification of negotiable instruments as mentioned in section 3095 of the Civil Code. It not only recites a consideration but "it is presumed to have been made for a valuable consideration," before its maturity, "and in the ordinary

course of business.". (Civ. Code, sec. 3104.)   In effect there was here an obligation that the drawer's estate would pay if the bank refused.

Mr. Daniels shows that the doctrine of the revocation of a check or bill by the death of the drawer is generally based on the English case of *Tate* v. *Hilbert,* 2 Ves., Jr., 118 (1793), 4 Brown Chy. Cas., 286; Chitty, Jr., on Bills, 510. In *Tate* v. *Hilbert* it was held that the *gift* of a common check on a banker payable to bearer was not a valid *donatio mortis causa* or an appointment or disposition in the nature of it. Says Mr. Daniels: "It is quite true that authority to an agent is revoked, as a general rule, by death of the principal; (Story on Agency, sec. 488); but this doctrine is qualified by the equally well-settled principle, that if the authority be coupled with an interest in the thing vested in the agent, the death of the principal operates no revocation.   Now where a check is given to the payee for a valuable consideration (and the check imports value), the authority to the payee to collect the amount from the bank is coupled with a vested interest in the check.   He can sue the drawer upon the check if it be dishonored. . . . The English case above referred to does not determine, as has been supposed, that where a check is given for value, the authority of the banker to pay it is revoked. The death of the drawer of an ordinary bill of exchange does not revoke it, and we can discern no principle of law which allows the death of the drawer to affect the rights of a check-holder who has given value for it."   The author cites vol. 1 at p. 498; Chitty on Bills, 282, 287; *Cutts* v. *Perkins,* 12 Mass. 206; Edwards on Bills, 454; Parsons on Notes and Bills, 287.   The author further says: "The idea that the death of the drawer of a check given to the payee for value, operates a revocation, is, as it seems to us, a total misconception of the law.   For a check is a negotiable instrument as often, if not more frequently, given for value, than any other species of commercial paper.   The drawer is deemed the principal debtor; (sec. 1587); and it is anomalous to hold that his death in anywise lessens his obligations, or the right of the bank to pay it, when given for value."   (2 Daniels on Negotiable Instruments, sec. 1618b.)

Mr. Morse discusses the doctrine of revocation in volume 1, section 400, and contends that it is "a perversion of reason,

whatever may be the view taken of the question of assignment." Among other reasons given, the author says: "It is inconsistent to hold that a general deposit is a debt, and that the bank is not an agent or trustee or bailee in respect to it, and then, just to bolster up this error, turn completely about and say the bank is an agent, and must be governed by the rules of agency"; that even admitting that the rules of agency control, "an agency clearly intended to be good after death is so held"; that the personal representatives take the property of the deceased, subject to all proper claims against it; that the holder may sue the drawer on a check; it is a binding instrument and this contract should not be lessened by death more than others.

In the present case it is not necessary to determine the question definitely. If the bank has paid the money of deceased to the administrator it can show the fact and in that case the administrator seeks only to be guided as to the payment. The principal objection made to the claim is that the check was an ineffectual attempt at a testamentary disposition. On its face the instrument cannot be so regarded. It is a valid and binding obligation on which plaintiff may recover. (*Landis* v. *Woodman,* 126 Cal. 454, [58 Pac. 857]. If there is any good defense to it this may be shown by answer and at a trial.

We think the demurrer should have been overruled and defendants required to answer.

The judgment is, therefore, reversed.

Hart, J., and Burnett, J., concurred.