### DYER v. INTERNATIONAL BANKING CORPORATION.

(Circuit Court of Appeals, Ninth Circuit. January 5, 1920. Rehearing Denied February 16, 1920.)

#### No. 3144.

1. BILLS AND NOTES &#9758;453—NONNEGOTIABILITY OF NOTE ACCOMPANIED BY CONTRACT.

Under Civ. Code Cal. § 1459, making notes accompanied by a contract nonnegotiable as to persons with knowledge of the contract, an indorsee with knowledge of a contract executed at the same time as a note holds the note subject to all conditions and defenses that would have attached, had the note remained in hands of the payee.

&#9758;For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. BILLS AND NOTES ⊕434—RECOVERY OF PAYMENT ON NOTE, BEFORE PAYMENT DUE ACCORDING TO COLLATERAL CONTRACT, NOT DEPENDENT ON RESCISSION OF SUCH CONTRACT.

Where maker of note, although not liable thereon, under the terms of a contract accompanying the note, until the payee had performed certain work called for by the terms of the contract, paid the note, mistakenly believing the work had been done, to payee's assignee, who had notice of the contract conditions, maker's right to recover such payment did not depend on his rescission, for both his original right to avoid payment for nonperformance and his resulting right to recover payment made prior to performance depended on the contract's operation, and not its rescission.

3. BILLS AND NOTES ⊕434—PAYEE'S SOLVENCY IMMATERIAL IN MAKER'S ACTION TO RECOVER PAYMENT FROM INDORSEE.

In maker's action to recover payments mistakenly made on a note to an indorsee, who took the note with knowledge of a related contract between maker and payee, the payee's solvency when he indorsed the note is immaterial, since the indorsee secured a nonnegotiable instrument, which gave it no right of recourse against the payee on the maker's default, in view of Civ. Code Cal. §§ 3108, 3116–3186, relating to the indorsement, presentment, and dishonor of negotiable instruments.

4. BILLS AND NOTES ⊕434—RECOVERING PAYMENTS MADE WITHOUT INVESTIGATION.

A maker of a note may recover payments mistakenly made from an indorsee taking the note with knowledge of a related contract between maker and payee, although the maker made no investigation, at the time he paid the note, as to whether the payee had fulfilled his obligations under the related contract.

In Error to the District Court of the United States for the Second Division of the Northern District of California; Oscar A. Trippet, Judge.

Action by Edward F. Dyer against the International Banking Corporation. Judgment for defendant, and plaintiff brings error. Reversed and remanded for a new trial.

Powell & Dow, of San Francisco, Cal., for plaintiff in error.
R. P. Henshall, of San Francisco, Cal., for defendant in error.

Before GILBERT, ROSS, and HUNT, Circuit Judges.

HUNT, Circuit Court. Action at law by Dyer to recover money paid to the International Banking Corporation, because of an alleged mistake. There was a verdict and judgment in favor of the Banking Corporation. The facts appear to be these:

On April 1, 1914, Dyer, plaintiff in error, and one Green, who died in September, 1914, made a contract whereby the Green-Dyer Company, a corporation, was to be formed to engage in the billboard business. Green agreed to subscribe and pay for all capital stock of $10,-000: Dyer to buy from Green half of this stock for $30,000, payable as follows: $10,000 upon the execution of the agreement, $10,000 on July 1, 1914, and $10,000 on October 1, 1914. The contract contained the following clause:

"No payment shall be made by said Dyer, other than said $10,000, until the said plants shall have been duly and legally transferred to the Green-Dyer Company, as hereinbefore required, and until said plants shall have been completed as provided in paragraph IX hereof."

⊕For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

By paragraph IX Green agreed to complete the plants on or before June 1, 1914, by increasing the capacity of the billboards, so that the linear footage thereof should be 10,000 feet. In paragraph IX there was also this provision:

"That should the said Green fail or refuse to complete said plants by June 1, 1914, or within 60 days, as provided in the last proviso, the said Green shall at the election of said Dyer return forthwith to said Dyer all moneys received by him under this contract together with interest thereon at 8 per cent. per annum from April 1, 1914, until paid."

Paragraph VI of the contract provided that if Dyer, before April 1, 1915, should become dissatisfied with the purchase arranged for, and should desire a return of all moneys paid by him under the contract, he should notify Green to that effect, and Green promised to pay Dyer all moneys paid under the contract, payments in return to be as follows: $10,000 on April 1, 1915, $10,000 on or before July 1, 1915, and final payment of $10,000 on or before October 1, 1915; the deferred payments of $10,000 each to be evidenced by notes, and the whole of the $30,000 to bear interest at the rate of 8 per cent. from April 1, 1915.

Green transferred the $10,000 note (dated April 1, 1914) to the International Banking Corporation, defendant in error, a few days after execution; the corporation then having knowledge that the plaintiff, Dyer, was not required to pay the money represented by the note unless the plants should be completed to 10,000 linear feet. On July 1, 1914, Dyer paid the note held by the corporation, although at the time of the payment the work of completing the plants to 10,000 linear feet had not been done; Dyer, however, believing that it had been done, and the payment being made while he was under that belief. Thereafter Dyer learned that the necessary work had not been performed, and brought this action to recover the amount he had paid on the note.

It was in evidence that Green negotiated the note for value prior to maturity; that after it was discovered that Green had not performed his contract, as agreed, Dyer first made demand for the payment of the money; that Green was then dead, and his estate was insolvent, although Green may not have been insolvent when he discounted Dyer's note at the bank. Dyer never rescinded the contract, and never tendered the note back to the bank, or offered to restore the stock he had received under the contract, and as late as March, 1915, demanded of Green's estate all of the moneys paid by Dyer under the contract of April 1, 1914, including the $10,000 involved in this suit. It is also in evidence that, after the nonpayment of such money on October 15, 1915, Dyer sold out all of the stock of Green in the company for $10,000 in collection of his demand. This right to sell was claimed by him under the fourth paragraph of the contract, which provided that the entire capital stock of the Green-Dyer Company should be deposited in escrow, and that Dyer should notify Green, before April 1, 1915, whether he elected to continue or withdraw from the company, and that in the event of election to continue the stock should be delivered by the escrow holder to the parties, 50 shares to each, and

in the event of election to withdraw (to withdraw) the stock should remain in escrow as security for the payments required to be made by Green to Dyer, and, if Green should fail in payments as required, the stock should be delivered to Dyer by the escrow holder, to be held as security.

The principal errors assigned arise upon the instructions to the jury. Among other things, the court charged that Dyer could not recover unless he rescinded the contract, and that when he discovered that the work had not been done it was his duty to offer to rescind the contract. The court also charged that the banking corporation was in as good a position as Green, and that, if the money had been paid to Green, Dyer could not recover from Green on the ground of mistake without rescinding the contract.

The argument in behalf of Dyer is that, as the Green-Dyer contract and the note in question were made at the same time, in the same transaction, and between the same parties, the contract and note were in effect one instrument as to all persons having knowledge that they were concurrent and dependent; that the banking corporation, having notice of the provisions of the contract, received the assignment of the note as a nonnegotiable instrument, subject to all conditions and defenses that would have attached to it, had it remained in the hands of the original payee; and that, as the work required by the contract to mature the note was not done, the banking corporation had no enforceable claim against Dyer at the time the note was paid.

On the other hand, it is the contention of the banking corporation that Dyer in no event can recover the money he paid under the contract unless he first rescinded the contract. It is said that Dyer could have rescinded when he discovered breach by Green, or could have affirmed, electing to hold Green under the terms of the contract, but, not having elected to rescind, his right to sue Green in general assumpsit is gone.

The case is simplified by avoiding confusion of the rights of Dyer as against Green with the rights of Dyer as against the banking corporation. As between Dyer and Green, the contract measures their respective rights; whereas, any right that Dyer has against the bank rests not upon a purely contractual relationship, but upon the principle that, where one has paid money to another under a mistake which, in equity and good conscience, should not have been paid, he may have redress by an action in the nature of assumpsit. United States v. Barlow, 132 U. S. 271, 10 Sup. Ct. 77, 33 L. Ed. 346; Steamship Co. v. Joliffe, 69 U. S. (2 Wall.) 450, 17 L. Ed. 805; Page on Contracts, § 789. This principle is in no way inconsistent with the rule, relied upon by plaintiff, that the several notes and contract should be considered together. Civ. Code Cal. § 1642; Goodwin v. Nickerson, 51 Cal. 166.

We are in accord with the opinion expressed in Spotton v. Dyer, 184 Pac. 23, where the main questions now presented were decided. In the case just cited the District Court of Appeal of the First District of California had before it the very contract now here involved. There Spotton, for the bank, sued Dyer upon the note payable October 1, 1914. Dyer set up the contract with Green, and pleaded that

the work necessary to mature the note had not been done, and that the bank knew of this fact. The appellate court affirmed the decision of the trial court, and held that the making of the notes and the contract were parts of one transaction; that the notes were nonnegotiable, because of the accompanying contract, of which the banking corporation had knowledge when it purchased the notes. The question of the duty of Dyer to rescind was also considered and the court pointed out that under the contract in addition to completing the plants and repaying Dyer, if he elected to withdraw, Green was under obligation to do a number of other things not involved in that action, and that if Dyer had rescinded, or if the contract had contemplated rescission, the result would have been a nullification of the provisions of the contract whereby, in the event of the election of Dyer to withdraw from the venture, the stock was to remain in the hands of the depository, and, if Green should fail to repay Dyer the money he had advanced, the stock was to be delivered to Dyer for security. The court said:

"To hold that Dyer was compelled to abandon his contractual rights as a prerequisite to his enforcement of them would be absurd."

The Supreme Court of the state denied the motion of the bank for a hearing, and the judgment has become final.

[1, 2] By section 1459, Civil Code of California, a note accompanied by a contract is nonnegotiable as to all persons having notice of the .contract. The banking corporation, having full knowledge of the provisions of the contract, received the assignment of the note here sued upon as a nonnegotiable instrument, subject to all conditions and defenses that would have attached, had the note remained in the hands of the original payee. Smiley v. Watson, 23 Cal. App. 409, 138 Pac. 367; Metropolis v. Moonier, 169 Cal. 592, 147 Pac. 265. It therefore follows that, as the work called for by the terms of the contract to mature the note was not done, the banking corporation had no enforceable claim against Dyer at the time the note was paid, and, this being so, the bank has no right to the money so paid, which in good conscience belongs to Dyer. Dyer always stood upon the contract, as he had a right to do, and, there being no legal obligation on his part to pay the bank the moneys here sued for, the provisions of the contract may yet be in force, including the agreement that Dyer was not to pay any more money until the plant should be completed, of which provision the bank knew when it bought the note in suit.

The error of the District Court was in assuming that, because there was a breach of the Green-Dyer contract by Green, rescission was essential before Dyer could maintain action against the bank. The relevancy of the contract referred to was to show that by virtue of its terms, all of which were known to the bank, Dyer was not obliged to make payment unless certain work specified in the contract was performed before June 1, 1914; but the bank had no contractual relationship with Dyer which required Dyer to rescind, nor would the liability of the bank be affected by a rescission by Dyer.

[3] Although the evidence was that the bank had "grave doubts"

of Green's responsibility, the question of his solvency at the time that he sold the note to the bank is not material, because under the record the bank had no claim against Green arising out of the purchase from him of the note in question. As the case was developed, it appeared that the bank bought a nonnegotiable instrument, nonnegotiable in fact, and therefore there was in the indorsee no right of recourse in the event of Dyer's failure to pay the note. Spotton v. Dyer, supra; sections 3108, 3116-3186, Civil Code of California. And as the bank could have had no recourse against Green, if Dyer had refused to pay the note, it follows that the circumstance that Dyer paid the note, and thereafter sought a return from the bank of the money paid to it, did not create on the part of Green any liability to the bank or give rise to any claim by the bank against Green. Kendall v. Parker, 103 Cal. 319, 37 Pac. 401, 42 Am. St. Rep. 117; McEwen v. Black, 44 Okl. 644, 146 Pac. 37.

[4] The fact that Dyer had the means of ascertaining that the work had not been done as required by the contract did not change the position of the bank. He was not obliged to make an investigation in order to maintain action. National Bank v. Miner, 167 Cal. 532, 140 Pac. 27; Crocker Bank v. Nevada Bank, 139 Cal. 564, 73 Pac. 456, 63 L. R. A. 245, 96 Am. St. Rep. 169; 15 Am. & Eng. Enc. of Law, p. 1106.

The judgment is reversed, and the cause is remanded, with directions to grant a new trial.