PETER HOVE v. STANHOPE STATE BANK and JOHN M. JOHN-
SON, Defendant, P. L. & W. E. PETERSON, Interveners,
Appellants.

**Equitable assignment of bank deposits:** PRIORITY OF LIENS.  Where proceeds of grain grown on leased premises were deposited by the purchaser in a bank to the credit of the tenant, and the tenant thereafter gave a check for the amount and also indorsed the deposit slip over to a third person, the transaction amounted to an equitable assignment of the fund which a court of equity will sustain as against the landlord's statutory lien for rent, although the check may not have been accepted or certified by the bank as provided in the Negotiable Instruments Act.

**Same.**   A letter written by a debtor informing a creditor that he has a fund in the bank and directing him to get it and apply it on his own and other stated accounts, together with a check on the bank for the amount and an indorsement and delivery of the deposit slip amounts to an assignment in fact of the fund.

*Appeal from Hamilton District Court.—* HON. J. R. WHIT-
AKER, Judge.

THURSDAY, MARCH 19, 1908.

SUIT was originally brought at law against the Stanhope State Bank to recover on a check given by John M. Johnson to the plaintiff.   Afterward an amended and substituted petition in equity was filed by the plaintiff making John M. Johnson a party defendant.   Still later P. L and W. E. Peterson intervened, claiming the fund on which the check was drawn.   The plaintiff demurred to the petition of intervention, which demurrer was taken under advisement, and the case was tried on its merits.   There was a final judg-

ment sustaining the plaintiff's demurrer, and finding the plaintiff entitled to recover the amount claimed. The bank and the interveners appeal.— *Affirmed.*

*Boeye & Henderson,* for appellants.

*Wesley Martin,* for appellee.

SHERWIN, J.— The defendant John M. Johnson was, during the season of 1903, a tenant of the interveners. In October of that year he sold grain grown on the leased premises to a buyer by the name of Kepler, and the proceeds from such sale were deposited in the defendant bank to the credit of said John M. Johnson. About the 1st of November of the same year he gave the plaintiff his check for the amount of such deposit, $230.50, but, upon presentation of the check, payment thereof was refused by the bank. About this time, and before the expiration of his lease, John M. Johnson left the farm in question still owing the interveners a part of the rent which he had agreed to pay for the season of 1903. After the check had been given to the plaintiff by Johnson, Johnson also delivered to him a deposit slip which he had received when he left the money with the defendant bank. This deposit slip bore an indorsement in substance directing the bank to pay the amount thereof to the plaintiff. About the time of the presentation of the check to the bank for payment, but whether before or after does not certainly appear, the grain buyer, Kepler, having learned that Johnson had left the State, and being somewhat anxious as to the liability of his company for buying grain upon which the interveners had a landlord's lien, drew a check in favor of the interveners for the amount of the deposit in question, and signed Johnson's name thereto, together with his own, and without any shadow of authority from Johnson. Johnson made no defense to the plaintiff's claim, but testified as a witness for

the plaintiff that he gave him the check and deposit slip and order thereon for the purpose of assigning and transferring to the plaintiff the deposit in question.    The bank in its an- swer alleged that the money deposited with it by John- son was received from grain raised on the intervener's farm and which would at that time have been subject to a land- lord's lien; that at the time of the sale of said grain there was rent due the interveners from said Johnson in a sum largely in excess of the money realized from the sale there- of; and that said interveners had a lien upon said grain for the rent then unpaid.    The bank further alleged that at the time of the sale of the grain to Kepler, Johnson repre- sented to Kepler that the sale was made for the purpose of applying the proceeds thereof toward the payment of rent then due, and that such use would be made of the money; that, relying upon said representation, Kepler paid for the grain by check on the defendant bank, and that said check was deposited by Johnson to his own credit; that afterward Kepler, for the purpose of carrying out the promise and rep- resentation made to him by Johnson, drew a check upon the bank for the sum of said deposit in the name of Johnson and in favor of the interveners; and that said sum was after- wards paid to the interveners.    The petition of intervention plead substantially the same facts as the bank, and further plead their statutory lien as the basis for the recovery of the money in question.    The petition of intervention was filed in October, 1906.    The demurrer to the petition of inter- vention plead the statute of limitations.

The appellants take the position that the demurrer was improperly sustained because the petition of intervention was not based on the landlord's lien statute or an attempt

1. EQUITABLE ASSIGNMENT OF BANK DEPOSITS: priority of liens.

to enforce such lien either against the tenant or against any one acquiring property from him on which the lien might exist.    The ap- pellants further contend that no action can be maintained against the defendant bank on an unaccepted and uncertified

check, nor upon an unaccepted assignment of the deposit
slip. The appellee urges that the check and assigned
deposit slip operate as an equitable assignment of the fund
in the hands of the bank, and that in equity it can make no
difference, because the check was unaccepted or uncertified.
Prior to the enactment of the negotiable instruments law in
1902 it had long been the rule in this State that a check
drawn upon a general deposit fund in a bank amounted to
an equitable assignment *pro tanto* of such fund. See
*Kuhnes v. Cahill*, 128 Iowa, 594, and cases therein cited.
Whether such rule has been abrogated by section 3060-a189,
Code Supp. 1902, in both law and equity actions, we shall
not now determine. For the purposes of this case, however,
it may be conceded that, in so far as law actions are con-
cerned, the statute referred to should be held to take the
place of previous decisions of this court. But it must be
remembered that this is an action in equity; that a fund
was deposited with the defendant bank which, so far as the
bank may be heard, was the property of Johnson. It must
be conceded, we think, that the interveners had no possible
right to this fund by virtue of the statutory lein upon
which their petition of intervention was clearly based. The
demurrer to such petition was therefore properly sustained,
and the sustaining thereof left the interveners without any
standing or right in court. It is conclusively shown that
Kepler had no right to draw a check in the name of Johnson
transferring this fund from Johnson's credit to the credit of
the interveners, and this fact was well known to the bank.
It is therefore very manifest that, if the bank in fact gave
the interveners credit for it, and subsequently paid it over
to them, they did so without any shadow of right for so
doing, and cannot now be heard in justification of such
action as against the plaintiff's claim of an equitable assign-
ment thereof. That the bank fully understood the situation
is fully apparent from the fact that it took the precaution
to protect itself against recovery from it by the plaintiff.

We then have this situation to deal with: The bank could not, under well settled rules of law, deny Johnson's ownership of the deposit. There has never been any legal transfer of the title to said money from Johnson to any person, except as the same is evidenced by the check and deposit slip which he gave the plaintiff, and, if the plaintiff may not maintain this action in equity, claiming either an equitable or a specific assignment of this fund, the bank will be permitted to retain the same for its own use, so far as the purposes of this case are concerned. Such a situation might give the plaintiff, together with other creditors, the right to attach said money in the hands of the bank, but it seems to us that this would clearly deprive the plaintiff of the benefit he should have as a reward for his diligence. The section of the Code which is relied upon by the appellants is in the following language: " A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless and until it accepts or certifies the check." Code Supp. 1902, section 3060-a189. This section was undoubtedly enacted for the purpose of protecting banks against losses which might be occasioned by the double payment of checks on general deposit, and its only intent and purpose is undoubtedly to protect banks only when they are acting in good faith and without any attempt to assist particular persons in the collection of their debts to the exclusion of others who are equally as much entitled to protection. In *Dillman v. Carlin,* 105 Wis. 14 (80 N. W. 932, 76 Am. St. Rep. 902), the Supreme Court of Wisconsin had occasion to consider a similar question, and, while the facts were somewhat different from the facts before us, we think the same legal principle is applicable to the instant case. The only substantial difference in the cases is that there the bank stood absolutely indifferent as to the various claims made to the ownership of the fund there in question, and was permitted to deposit the money for the benefit of

the successful claimant. It was there held that whether the
bank be legally liable to the check holder or not, " if by
any means the parties interested are brought into a court
of equity while the bank is yet the debtor and can be pro-
tected against paying its debt twice, and it stands indifferent
as to who gets the money so long as it is protected, the
check holder will be preferred to the drawer or any sub-
sequent claimant, whether by assignment of the drawer, or
by legal process served upon the drawee." And we see no
reason why the rule should not be applied by courts of equity
to cases like the present. Giving to the section of the Code
under consideration its full force and effect in law actions,
we are of the opinion that, where the parties are properly in
court in an equitable action, and where it is shown that the
power intended to assign the entire fund is a part thereof,
the rule of the cases heretofore referred to should govern,
and a party holding such assignment of a fund on general
deposit should be protected as against subsequent claimants
at least.

Furthermore we think there was in fact an assignment
of the fund in question. Johnson wrote the plaintiff a
letter in which he told him, in substance, that the money
was in the bank for him, and that he should
get it and use it in paying his own account and
the account of Iverson Bros. The plaintiff, doubting his
ability to get the money from the bank on the letter alone,
made out a check and sent it to Johnson for his signature,
and he also requested an assignment of the deposit slip.
These transactions amounted to an assignment in fact, and
it is well settled that such an assignment will be en-
forced in equity. *Fourth Street Nat. Bank v. Yardley,* 165
U. S. 634 (17 Sup. Ct. 439, 41 L. Ed. 855). And see on
same point *Bank v. Ry. Co.,* 52 Iowa, 378. In the *Yardley*
case it was said: " Whilst an equitable assignment or lien
will not arise against a deposit solely by reason of a check
drawn against same, yet the authorities establish that if, in

2. SAME.

the transaction connected with the delivery of the check, it was the understanding and agreement of the parties that an advance about to be made should be a charge on and be satisfied out of a specified fund, a court of equity will lend its aid to carry such agreement into effect as against the drawer of the check, mere volunteers, and parties charged with notice." The defendant bank unquestionably had notice of the transaction between the plaintiff and Johnson, and it should be held liable to the plaintiff for the fund so assigned to him.

The judgment should be, and it is, *affirmed.*