MINNEHAHA NAT. BANK OF SIOUX FALLS, Appellant, v. SERVICE SHOE SHOP, et al, Respondents.

(220 N. W. 512.)

(File No. 6182. Opinion filed July 14, 1928.)

*Boyce, Warren & Fairbank,* of Sioux Falls, and *Gardner & Churchill,* of Huron, for Appellant.

*N. B. Bartlett,* of Sioux Falls, and *Null & Royhl,* of Huron, for Respondents.

BROWN, J. The Service Shoe Shop was a corporation doing business in Huron, of which Harry C. Lampe was president. On December 21, 1923, it borrowed $1,000 from the James Valley Bank of Huron, and gave its note therefor, due in 30 days with

interest at 8 per cent, which before delivery was indorsed and guaranteed by Lampe. The James Valley Bank carried an account with the Minnehaha National Bank of Sioux Falls, and frequently rediscounted notes to that bank. While there was no express contract as to the terms on which these rediscounts were made, there was an understanding between the James Valley Bank and the Minnehaha National Bank that the latter would carry all rediscounted notes at 7 per cent for the time during which it held them, no matter what might be the rate of interest carried by the notes rediscounted. It was also part of the regular course of business between the two banks that, whenever the James Valley Bank would call for the return of a rediscounted note, the Minnehaha National, if it had a "free balance" in the James Valley Bank account, would comply with the request and return the note, charging the account of the James Valley Bank with the amount of the principal of the note plus interest at 7 per cent for the time it had held the note. Two or three days after the execution of the note herein referred to, it was rediscounted with the Minnehaha National. On January 8, 1924, Service Shoe Shop paid to the James Valley Bank the amount then due on the note, with interest according to its terms to that date, and received from the bank a receipt reading as follows:

"January 8, 1924.

"Received from Service Shoe Shop $1003.98 in payment of note No. 34432 of Service Shoe Shop rediscounted with Minn. Nat'l Bk. Soo. Falls.

[Signed] James Valley Bank,

"C. C. Smith, Cash."

At the same time the James Valley Bank credited its interest account $3.98, charged the rediscount account $1,000, and entered on its books a credit to the Minnehaha National of $1,000; the Minnehaha National not being credited with the interest, because of the custom between the banks that the Minnehaha National should figure its interest at 7 per cent to the date that it returned the note. The James Valley Bank on that same day wrote and mailed to the Minnehaha National the following letter:

"Huron, South Dakota, January 8th, 1924.

"Minnehaha National Bank, Sioux Falls, S. D. Dear Sirs: Please return to us the Service Shoe Shop note of $1,000.00 which

matures January 21st, charging our account for the principal and interest in this connection.

[Signed] C. C. Smith, Cashier."

The James Valley Bank continued to do business until the close of business hours on January 8th, but did not open for business on January 9th, and on the morning of that day was taken over by the superintendent of banks, and has since been under his control for the purpose of liquidation. Immediately upon taking charge of the bank, the superintendent of banks advised by telegram all banks with which the James Valley was doing business, of its suspension.

At the time of receiving this telegram, the Minnehaha National had on deposit to the credit of the James Valley Bank, the sum of $1,060.71, which, under its definition of the term, would be deemed "a free balance" warranting the charging of the Service Shoe Shop $1,000 note against it. After receiving the telegram (which directed the Minnehaha National to "forward statement with vouchers and draft for our balance," and was signed "James Valley Bank, by L. M. Larson, deputy superintendent"), and in the forenoon of the same day, the bank received the letter mailed the previous day by the James Valley Bank, asking the return of the Service Shoe Shop note.

The Minnehaha National did not comply either with the request to return the Service Shoe Shop note and charge the account of the James Valley Bank, nor with the telegram of the deputy superintendent, asking for statement and draft for balance due the James Valley Bank. The Minnehaha National had, previous to the suspension, transmitted to the James Valley Bank, for collection and returns, checks deposited with it by its customers, subject to final payment, and with the right to charge them back; the Minnehaha National acting as agent for the collection of such items. These items had been transmitted in four "cash letters," and had been collected by the James Valley Bank, and its drafts for the amounts of three of these letters, $72.50, $49.97, and $726.59, on the Continental and Commercial National Bank of Chicago had been received by the Minnehaha National prior to the suspension, and by it transmitted to the Continental and Commercial for payment. The fourth cash letter for the sum of $1,127.15 was received by the Minnehaha National in the same mail in

which it received the request for the return of the Service Shoe Shop note and after it received the telegram announcing the suspension of the James Valley Bank. This last draft was, however, also transmitted by the Minnehaha National to the Continental and Commercial National of Chicago. All of these four drafts were stamped "Paid" through the Chicago Clearing House, but all of them likewise had this indorsement canceled by red stamp labeled "Endorsement erased," and none of them were finally paid to the Minnehaha National.

At the close of business on January 9th, the sum of $1,060.71 still stood to the credit of the James Valley Bank on the books of the Minnehaha National, but on January 10th this balance was wiped out by the Minnehaha National applying the amount thereof on the four drafts hereinbefore referred to, prorating the amount among the various checks included in those four drafts, and charging back the balance on such checks to the customers who had deposited such checks subject to final payment.

Subsequently the Minnehaha National commenced this action against the Service Shoe Shop as maker and Lampe as indorser of the $1,000 note, and before trial the superintendent of banks was brought in as a party defendant, principally for the purpose of determining in one action what claim any of the other parties might have against the James Valley Bank.

The defendants Service Shoe Shop and Lampe answered, setting up as a defense payment of the note, and as a counterclaim demanded that the amount of $1,006.66 of the $1,060.71 be declared by the court to be impressed with a trust for the payment and satisfaction of the note, and that the note be returned to the defendant Service Shoe Shop.

The case was tried to the court, which made findings and conclusions in favor of the defendant Service Shoe Shop and Lampe, and judgment was entered on September 15, 1925, dismissing this action on its merits, and, from this judgment and an order denying a new trial, plaintiff appeals.

Appellant states its contention substantially as follows: (1) The Minnehaha National was the owner of the note, and could not be forced to accept payment before it fell due, and the James Valley Bank had no right to require its payment or return before due; (2) the James Valley Bank was not the agent for the Minne-

haha National for the collection of the note, and payment of it was not the payment of the note; (3.) the letter of the James Valley Bank to the Minnehaha National, requesting it to return the note and charge the amount due thereon against the account of the James Valley Bank, did not constitute a partial assignment of the funds of the James Valley Bank in the possession of the Minnehaha National; (4.) the Minnehaha National had a right to set off against the deposit of the James Valley Bank the four drafts already mentioned, and which were dishonored; and (5) at the moment the state banking department took possession of the James Valley Bank, at 9 o'clock a. m. on January 9th, the letter of the James Valley Bank requesting the application of the funds to the payment of the Service Shoe Shop note was void, and the Minnehaha National had no right to apply the deposit to anything except its own right of set off against debts due it from the James Valley Bank.

Respondent concedes that the James Valley Bank was not the agent of the Minnehaha National for the collection of the note, so that question need not be further considered.

Revised Code 1919, § 1891, provides:

"A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless and until it accepts or certifies the check."

Courts have generally construed this section to apply only where there is an ordinary check given and nothing more; that is simply means that the giving of the check does not operate as an assignment. But in this case the letter of the James Valley Bank is not a check, and, taken in connection with the regular course of business between the two banks and the entries made on its books by the James Valley Bank at the time of writing it, the letter is more than an ordinary check. The entries made by the James Valley Bank on its books crediting the Minnehaha National with the face of the note and the receipt given by it to the Service Shoe Shop, taken in connection with the letter, amounts, in our opinion to an equitable assignment of so much of the "free balance" in the Minnehaha National to the credit of the James Valley Bank as was necessary for the payment of the Service Shoe Shop note.

In Hove v. Stanhope State Bank, 138 Iowa 39, 115 N. W. 476, it was held that a check accompanied by a deposit slip, for the amount of the deposit in a bank, with an indorsement on the deposit slip, signed by the depositor, to pay the amount to the party named in the check, operated as an equitable assignment, and that the bank, after receiving notice of the check and deposit slip with this indorsement, could not pay the deposit to others without incurring liability to the plaintiff.

 The contention that the Minnehaha National could not be required to accept payment before the note fell due, and that the James Valley Bank had no right to require its payment before, cannot be sustained. While it is true that ordinarily the holder of a promissory note cannot be required to accept payment before its due date, circumstances may exist that amount to consent on the part of the holder that payment will be accepted at any time before maturity, and we think that such circumstances existed here. Appellant's own officers testified that, "if the bank notified us to send the paper in to them and charge their account, if we had a free balance to warrant the charging of the paper, we would do it." It is clear from the testimony of the bank officers that what was meant by a "free balance" was a balance to the credit of the James Valley Bank against which there was no contingent liability existing on behalf of the Minnehaha National, and that there was no such liability existing against the balance of $1,060.71 is beyond question from the testimony of the officers of that bank.

 After the suspension, the entire claim of the Minnehaha National against the James Valley Bank was $1,985.45, and this was made up wholly of the four drafts we have referred to, sent in payment of cash letters, and the sum of $9.24, protest fees on those drafts. None of these drafts was dishonored before January 10th, and in any event they all represented items which were taken for collection by the Minnehaha National, and which it had a right to charge back against its depositors if it did not receive final payment. It did in fact charge back against those depositors the entire balance of their deposits after applying the $1,060.71, but no part of this $1,060.71 was the proceeds of the collection of these drafts or of the cash letters. The $1,060.71, from all that appears, may have been actual money deposited by the James Val-

ley Bank in its account with the Minnehaha National, or $1,000 of it may even have been credited in the account for the Service Shoe Company note, and, as was said in the case of Hove v. Stanhope State Bank, 138 Iowa 39, 115 N. W. 476, the Minnehaha National had no right to deprive the respondent of the benefit it should have as a reward for its diligence, by paying to others what had been assigned to respondent. The direction in the letter requesting the return of the Service Shoe Shop note, which in the existing circumstances, we hold was an equitable assignment of the amount due on that note, was received by the Minnehaha National at least a day before it wiped out the account of the James Valley Bank by prorating the amount thereof among the depositors whose items of deposit were represented in the drafts and this preference to its own depositors and discrimination against the Service Shoe Shop the Minnehaha National had no right to make.

"One must not change his purpose to the injury of another." Code, § 43. By the invariable custom and course of business between the two banks, the Minnehaha National had returned notes and charged the account of the James Valley Bank without regard to the maturity of the notes. Had there been any intimation that the Minnehaha National would insist on holding the Service Shoe Shop note until its maturity, it must be presumed that the James Valley Bank would not have accepted the Service Shoe Company's payment when it did, and to permit the Minnehaha National now to invoke the rule that a creditor cannot be required to accept payment before the maturity of the debt, would be to permit it to change its purpose to the injury of another.

It is next contended by appellant that, when it received the telegram from the banking department notifying the suspension of the James Valley Bank, the letter requesting the return of the Service Shoe Shop note was void, and that the Minnehaha National had no right to apply the deposit as directed. But had it any more right to apply that deposit to the payment of claims which its own depositors held against the James Valley Bank as represented by the four drafts? It could have rendered to the examiner in charge the statement called for in the telegram, and held the balance of $1,060.71 until the manner in which it should be applied could be legally determined. Concede that it had a

right to set off the $1,060.71 pro tanta against any indebtedness of the James Valley Bank to it, the James Valley was indebted to it on the indorsement of the Service Shoe Shop note as well as on the four drafts, and, the James Valley Bank having directed application of the deposit on the Service Shoe Company note, the Minnehaha National could not disregard this direction and apply it otherwise except at its own risk. If the James Valley Bank had not failed, its direction as to which obligation its deposit should be applied on would have had to be complied with, under the rule that a debtor under several obligations to another, may direct to payment of which obligation his money shall be applied, and the creditor must so apply it. Code, § 757.

We see no reason for saying that the debtor's insolvency transposes the rights of the parties in this respect, so as to give the creditor the right, despite the direction of the debtor, to make a different application of the money. The situation of Service Shoe Shop here is similar in principle to that of National Bank of the Republic in Brown v. Sheldon State Bank, 139 Iowa 83, 117 N. W. 289. The Sheldon Bank wrote its Sioux City correspondent to remit $1,000 to National Bank of the Republic "for our credit," and on same day charged National Bank of the Republic with $1,000, and credited Sioux City Bank that amount. Sioux City Bank sent National Bank of the Republic a draft for $1,000, charging the amount to account of Sheldon Bank. On receipt of the draft, the National Bank of the Republic credited the amount to account of the Sheldon Bank. The Sheldon Bank failed, and the draft was not paid. Without credit for the draft, the account of the Sheldon Bank with the National Bank of the Republic at the close of business was $450 overdrawn; with that credit there was a balance of $550 the other way. It was held that the National Bank of the Republic was entitled to the $1,000. The court on this branch of the case says:

"When the Sioux City Bank, in compliance with the order given, executed the draft and deposited the same in the mail, properly addressed, there was, in legal contemplation, and on plainest principles, a delivery thereof to the claimant bank."

The judgment and order appealed from are affirmed.

BURCH, P. J., and POLLEY and SHERWOOD, JJ., concur. CAMPBELL, J., dissents.