[No. 1738, July 8, 1915.]

## ELGIN v. GROSS-KELLY & COMPANY.

### SYLLABUS BY THE COURT.

1. Where money has been paid under mistake as to a material fact to one not entitled thereto and who cannot in good conscience receive and retain it, the law raises an im-

plied promise on his part to refund it, and an action will lie to recover it back.

P. 455

2. The provision of the negotiable instruments statute that a check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank is a declaration of the rule that as against a drawee bank, a check is not an assignment of the fund. But, as against the drawer, the giving of a check for value on an ordinary bank deposit should be considered an assignment of the fund pro tanto.

P. 456

3. To the extent that a bank check works an assignment pro tanto of a fund on deposit, the death of the depositor will not revoke the authority of the bank to pay the check, which has been given for a valuable consideration, and is therefore coupled with an interest.

P. 456

4. In the absence of evidence to that effect, the Supreme Court cannot take judicial notice that a case before the court had connection with one formerly decided by it.

P. 464

Appeal from District Court, Bernalillo County; H. F. Raynolds, Judge.

Action by Willie Elgin, as administrator de bonis non of the goods, chattels, and credits of M. B. Atkinson & Sons, against Gross-Kelly & Co., a corporation. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

EDWARD A. MANN of Albuquerque and REED HOLLOMAN of Santa Fe, for appellant.

Action for money had and received is purely equitable and recovery must be upon equitable principles.

27 Cyc. 849.

The law raises an implied promise to refund money by one who has received it under a mistake as to a material fact and is not entitled thereto.

15 A. & E. Enc. Law (2d Ed.) 1103, 4, 5.

For discussion of whether death of drawer revokes check, see Daniels Neg. Insts., sec. 1618B; McMurrary, Adm., v. Ennis, 31 N. Y. St. R. 976; Nassano v. Toulumne County Bank, 130 Pac. (Cal.) 29; 1 Morse, sec. 400.

Dow v. Simpson, 17 N. M. 357, in principle is wrong, unjust and inimical to the business interests of the state.

2 Lindley on Partnerships, 590; Moore v. Huntington, 17 Wall. 417; Wickliff v. Eve, 17 How. 468; Emerson v. Center, 118 U. S. 3; Easton v. Cartwright, 84 Mo. 27; Holman v. Nance, 84 Mo. 674; Matthews v. Hunter, 67 Mo. 295; Hartnell v. Fegan, 3 Mo. App. 1; McCaughn v. Brown, 76 Miss. 496; Thomas v. Mann, (Wyo.) 135 Pac. 1008; Harrington v. Herrick, 64 Fed. 470.

MARRON & WOOD of Albuquerque, for appellee.

The decision appealed from is well within the principle of Dow v. Simpson, 17 N. M. 357.

The title of the executor or administrator relates back to the time of death of the deceased.

Schuler on Executors (3d Ed.), secs. 195, 199; 7 Am. & Eng. Enc., 232, 269; 18 Cyc. 879, 58.

All property of the deceased is in custodia legis for the benefit of persons interested therein.

18 Cyc. 176; Schuler's Executors, sec. 200; Hold v. Augusta Bank, 13 Ga. 341.

Replevin may be maintained by executor for goods or property taken after death of deceased and before executor qualified or the administrator was appointed.

Kent v. Bothwell, 9 L. R. A. (Mass.) 258.

Bank becomes mere creditor of depositor.

Morse on Banking, sec. 289.

Elgin v. Gross-Kelly & Co., 20 N. M. 450.

Weight of authority is that check does not operate as an assignment of the deposit or amount of the check.

Fourth Natl. Bank v. Yardly, 165 U. S. 634; Lebreton v. Stanley Contracting Co., 114 Pac. 108; N. M. Neg. Insts. Act., sec. 189.

Death of drawer revokes check.

Tate v. Hilbert, 2 Ves. Jr. 118; Pullen v. Placer County Bank, 71 Pac. (Cal.) 83; Roden, Adm., v. The Bank, 56 L. R. A. 178; Edwards on Bills, 546; Byles on Bills, 101; Chitty on Bills (13th Am. Ed.), 484; Morse on Banks, sec. 400; Daniels on Neg. Instruments, sec. 1618-b, 1645; Bernard v. Whitney Nat. Bank, 12 L. R. A.

## STATEMENT OF FACTS.

During the year 1910 M. B. Atkinson and his two sons, M. B. Atkinson and Jesse Atkinson, were copartners doing business under the firm name of M. B. Atkinson & Sons, and were engaged in the live stock business. While so engaged this firm contracted an indebtedness with the appellant, Gross-Kelly & Co., in a large sum, and on the 19th day of September, 1910, gave to said Gross-Kelly & Co. a firm check in the sum of $2,300 in partial settlement of their account with said firm. On the following day, however, M. B. Atkinson, a member of said firm, died before the aforesaid check was presented for payment. The check was subsequently, and on the 24th day of September, 1910, presented to the State National Bank, of Albuquerque, New Mexico, by the holder and payee named therein, and the State National Bank, having funds to meet the same, promptly paid the said check without notice of the death of said M. B. Atkinson, and it appears from the record that the said firm of Gross-Kelly & Co. was likewise without notice of the death of said Atkinson, or at least the record does not disclose that said firm had been notified of the death.

In May, 1911, the appellee, Milton Dow, was appointed administrator of the partnership of M. B. Atkinson & Sons, and subsequently made a demand upon Gross-Kelly & Co. for the return of said sum of $2,300 paid to that

firm by the State National Bank upon the presentation of the check referred to. The ground for such demand by the administrator was that the said sum of $2,300 was the property of the said copartnership, and had been wrongfully received by the said Gross-Kelly & Co., because at the time of the payment of the check the death of M. B. Atkinson had terminated the partnership, and the bank was without authority to pay the check previously given.

The complaint in this cause set out two causes of action, the first seeking to recover the sum of $2,300 as represented by the check, with interest thereupon. The second cause of action, as set out in the complaint, is predicated upon the following state of facts, to-wit: After the death of M. B. Atkinson the surviving partners, the sons of the deceased, made and executed to Gross-Kelly & Co. a certain chattel mortgage covering certain personal property of the firm of M. B. Atkinson & Sons, in order to secure the payment of the balance of the debt due from said firm of M. B. Atkinson & Sons to Gross-Kelly & Co., who subsequently foreclosed the chattel mortgage and applied the proceeds of said sale to the firm debt referred to. The plaintiff in the court below, Mr. Milton Dow, as administrator of the partnership estate, demanded of Gross-Kelly & Co. the possession of the property described in said chattel mortgage, who refused to deliver the same. Upon which state of facts the plaintiff in the court below, as administrator of the said partnership estate, for the second cause of action sues for the conversion of said personal property, the admitted value of which is $793.50.

The case below was tried by the court without a jury, and judgment rendered in favor of plaintiff, as administrator, and against the defendant, Gross-Kelly & Co., for the sum of $3,701.55, with interest on said amount at 6 per cent. from April 17, 1914. The amount of this judgment is made up, as shown by the findings of fact and conclusions of law of the trial court, of the sum of $793.50, with interest thereon from the 11th day of November, 1911, to the date of the judgment, in the sum of $115.86, or the total of $909.36, which is based upon the conversion of the personal property included within the chattel mort-

gage, and the further sum of $2,300, being the amount of
the check given by the firm of M. B. Atkinson & Sons,
with interest thereon at 6 per cent. from September 24,
1910, up to the date of the judgment of the trial court,
making the aggregate amount $2,792.20.

Since this case was docketed in this court the appellee,
Milton Dow, has died, and Willie Elgin, subsequently ap-
pointed as administrator de bonis non, has been substi-
tuted as appellee.

## OPINION OF THE COURT.

HANNA, J. (after stating the facts as above.)—The
first assignment of error presented by the brief and argu-
ment of appellant is that the court erred in its conclusions
of law and its judgment in holding that the appellee was
entitled to recover from Gross-Kelly & Co. the amount of
the check which had been given by M. B. Atkinson &
Sons, and paid by the bank upon which it was drawn with-
out notice of the death of a member of said firm, after
the check was given and before it was presented and paid.
We are, therefore, concerned solely with the question of
whether or not the death of M. B. Atkinson is to be con-
sidered a revocation of the authority of the bank to pay
the check, and, such being the case, whether or not the
administrator of the partnership estate of M. B. Atkinson
& Sons can be permitted to recover from Gross-Kelly &
Co. the amount paid them by the bank upon presentation
of the check concerning which, as we understand the rec-
ord, there is no contention as to a full and adequate con-
sideration therefor. As pointed out by appellant, the ac-
tion is in the nature of an action for money had and re-
ceived, which is essentially an equitable action, the right
to which exists whenever one has money in his hands be-
longing to another which in equity and good conscience
he ought to pay over to that other.

[1] Generally speaking, it may be said that the right
to recover in a case of this character depends upon the
theory that money has been paid to the defendant or the
person from whom recovery is sought, where either there
was no obligation to pay the same or where the party to

whom it was paid had no right either to receive or to retain it, and, while the form of the action is one essentially of contract, the reasons which permit of the recovery are purely equitable in their nature. This principle of law is briefly set out in volume 15, A. & E. Ency. of Law (2d Ed.) p. 1103, in the following language, which we approve and adopt, and which is supported by authorities from almost every state in the Union:

"Where money has been paid under a mistake as to a material fact, to one not entitled thereto, and who cannot in good conscience receive and retain it, the law raises an implied promise on his part to refund it, and an action will lie to recover it back."

See, also, 27 Cyc. 849.

Applying this principle to the facts of the present case, it is contended by appellant that the action will not lie; there being no fraud or deceit in the transaction, and no contention that the amount was not due and owing to Gross-Kelly & Co. by the firm of M. B. Atkinson & Sons. It is the contention of appellee that the death of the drawer of the check revokes the check or authority of the bank to pay the same, and authorities are cited in support of this contention.

[**2, 3**] Appellee contends that the greatest weight of authority is to the effect that a check does not operate as an assignment of the fund, but is a mere request to pay, and vests the payee with no interest in the deposit or right against the bank until the bank has accepted the check. Appellee refers us to section 189 of our Negotiable Instruments Act, in support of this contention, and as absolutely settling the question in this jurisdiction. Section 189 is as follows:

"A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless and until it accepts or certifies the check." Section 189, c. 83, Laws of 1907.

They contend further in this respect that, except in

those jurisdictions where the execution and delivery of a check operates as an assignment pro tanto of the deposit, it necessarily follows, as a matter of course, that upon the death of the depositor the bank is indebted to his estate to the amount of the deposit then on its books, and cannot, therefore, change its relations or its liability to the estate, with the exception that it will be protected where it pays a check without notice of the death of the depositor.

The case of Tate v. Hilbert, 2 Ves. Jr. 118, 30 Eng. Report Rep. 548, is cited in support of this contention, and it is to be found that this case has been largely relied upon by other American authorities, but, as we believe, the rule announced in said case has been misapplied.

Appellee, in the case under consideration, contends that the English case of Tate v. Hilbert held that, where a bank pays a check after the death of a depositor and maker of the check and with notice of his death, it is liable to the administrator in the amount so paid, upon the ground that the death of the maker or drawer of the check terminated the right of the bank to pay out the money and to that extent revoked the check. In commenting upon this English case the District Court of Appeals of the Third Judicial District of California quoted from Daniel on Negotiable Instruments with approval as follows:

> "The English case above referred to does not determine, as has been supposed, that where a check is given for value, the authority of the banker to pay it is revoked. The death of the drawer of an ordinary bill of exchange does not revoke it, and we can discern no principle in law which allows the death of the drawer to affect the rights of a checkholder who has given value for it." Nassano v. Tuolumne County Bank et al., 20 Cal. App. 603, 130 Pac. 29.

The case of Tate v. Hilbert, supra, as we read it, simply held that the giving of a check on a bank payable to the bearer was not a valid donatio mortis causa or an appointment or disposition in the nature of it. In that case the deceased person had given a niece a certain check as a

gift, which, however, was not presented before the death of the maker, the niece bringing her action against defendant as executor of the estate of the deceased. The Lord Chancellor in his opinion, among other things, said:

> "There is no doubt that in this case the transaction is fair. If it fails, it is a case of mistake upon the part of the person meaning to give, and also a mistake or delicacy upon the part of a person to whom the gift was made; as, if she had paid this away either for valuable consideration or in discharging a debt of her own, it would have been good, or, even if she had received it immediately after the death of the testator. and before the bank was apprized of it, I am inclined to think no court would have taken it from her."

This quotation from the English case is pointed out for the sole purpose of showing that that case is not authority for the contention of appellee that the death of the maker of the check is an absolute and unqualified revocation thereof, and that appellee has misapprehended the interpretation of the case.

In commenting upon the same case Mr. Daniel, in his work on Negotiable Instruments (volume 2, § 1618b), says:

> "Whether Death of Drawer Revokes Check.— The death of a drawer of a check, as is stated by many authorities, operates as a revocation of the authority of the bank or banker upon whom it is drawn to pay it; and, though it is conceded that if the bank or banker pay the check before notice of the death, the payment is valid, otherwise, it has been considered, it is not. This view has been generally based upon the decision in the English case of Tate v. Hilbert, where it was held that the gift of a common check on a banker payable to bearer was not a valid donatio mortis causa, or an appointment or disposition in the nature of it. It is quite true that authority to an agent is revoked, as a general rule, by the

death of the principal; but this doctrine is quali-
fied by the equally well settled principle that, if
the authority be coupled with an interest in the
thing vested in the agent, the death of the prin-
cipal operates no revocation.   Now, where a
check is given to the payee for a valuable consid-
eration (and the check imports value), the au-
thority to the payee to collect the amount from
the bank is coupled with a vested interest in the
check.  He can sue the drawer upon the check if
it be dishonored.   The drawing of the check
without funds to meet it is a fraud, and the Eng-
lish case above referred to does not determine, as
has been supposed, that when a check is given for
value the authority of the banker to pay it is
revoked.  The death of the drawer of an ordinary
bill of exchange does not revoke it, and we can
discern no principle of law which allows the
death of the drawer to affect the right of a check-
holder who has given value for it.  The idea that
the death of the drawer of a check given to the
payee for value operates a revocation is, as it
seems to us, a total misconception of the law.  For
a check is a negotiable instrument as often, if not
more frequently, given for value than any other
species of commercial paper.  The drawer is deem-
ed the principal debtor; and it is anomalous to
hold that his death in any wise lessens his obli-
gations or the right of the bank to pay it, when
given for value."

The one case cited by appellant which in any real sense
of the word is analogous in point of fact to the case now
under consideration is that of McMurray, Administrator,
v. Ennis (City Ct. Brook.), 10 N. Y. Supp. 698, in which
case it was held that an administrator of a solvent estate
cannot recover moneys obtained from the bank after de-
ceased's death upon a check given by him a few days be-
fore death in payment of debts, though the holder knew
of his death and failed to inform the bank thereof.  This
case is so nearly in point and the reasoning thereof makes

so strong an appeal to our minds that we deem it wise to
quote at length from this opinion:

"The trial court, at the request of both par-
ties, and without objection or exception of either,
found that Lawrence Ennis, a few days before
his death, delivered, for valuable consideration,
checks for $1,200 drawn by him to the order of
the defendant Teresa Ennis, which checks she
had cashed at the bank a few days after his
death, without disclosing his death. This is an
action by his administratrix to recover from de-
fendant such sum for money had and received by
her to plaintiff's use. Judgment was rendered
in favor of plaintiff, from which defendant ap-
peals. There is no controverted question of fact
raised by either party, and there is no intimation
that the estate of Ennis is insolvent. This appeal
presents to us a single question of law, viz.: If
a debtor, a few days before his death, delivers, in
payment of his indebtedness, his own check to
the order of his creditor, who a few days after
such death, receives from the bank the money on
the same without informing the bank of the
death, can the administratrix of such dead debtor
recover the sum so received by the creditor, when
the estate is not shown to be insolvent? Strange
to say, an apparently thorough research fails to
disclose either an English or American authority
adjudicating this point. This would indicate
either that such a case seldom occurs, or, if it fre-
quently occurs in actual practice, the business
mind, at least, has acquiesced in the regularity
and justice thereof. When we consider the uni-
versal use of the bank check to transfer money
from debtor to creditor in this country and Eng-
land, in the transaction of the immense volume
of commercial, mercantile, and other business,
requiring millions of checks in each year, the
conviction is irresistible that it daily occurs that
at the death of debtors their checks to order of

creditors are uncollected in the hands of creditors, or in the mail for them, or on deposit with banks or bankers, or in the mail after such deposit, for collection. The well-known diligence and alertness of creditors engaged in every branch of business renders it certain that in daily practice checks of deceased debtors in the possession of creditors are paid by the banks until such banks are actually informed of death of the drawers. Any other rule would do much to clog the wheels of business, and bank checks would fall into disuse; for banks would not pay them unless they had actual information that the drawers were alive, and creditors in cash transactions would not receive payment by check. What we deem to be the existing practice should be upheld in the interest of the business public, creditors, banks, and debtors, unless to do so would violate some established rule of law. The doctrine evolved from such a practice antagonizes no express adjudication on the exact point. Respondent suggests that it is hostile to the principle of proportionate equality of creditors in the assets of a dead debtor. The answer to that objection is that the infringement of such right is not involved in this case, for there is not the slightest intimation in the evidence that the Ennis estate is insolvent. Then, again, the doctrine, so far as it applies to the cause at bar, is in perfect harmony with the equally well established rule that creditors of the solvent estate of a deceased debtor are entitled to be paid in full. Defendant has not exceeded her right in that respect. Respondent laid some stress on the rule that death revokes the authority of an agent, but he overlooked the modification or exception thereto. A creditor receiving from a debtor a check in payment of his claim, it is an authority coupled with an interest, viz., to receive the money from the bank,.

if it will pay the same, and retain the money as his own. Such an authority death never revokes. Respondent chiefly rests his right to recovery on the theory that death vests all the personal property of the intestate instanter in his administratrix. This is only partially true. It is not vested absolutely in her to do with as she pleases, but rather in trust to pay the debts due the creditors in full, if sufficient. The most that can be said in this case is that such trust has executed itself, so far as defendant is concerned, by virtue of the particular circumstances surrounding the transaction, without the active intervention of the administratrix. The contention of appellant does not, in our opinion, invade, harmfully at least, any of the established principles of our law.

"The action for money had and received to the use of another is in its nature a purely equitable action, and can never be maintained unless, according to a natural justice and equity, the plaintiff is entitled to the money as against the defendant. It admits of any defense which shows the plaintiff ought not, in good conscience, to recover. 'In one word, the gist of this kind of action is that the defendant, upon the circumstances of the case, is obliged, by the ties of natural justice and equity, to refund the money.' Moses v. Macferlan, 2 Burrows, 1010, 1012; Bank v. Raymond, 3 Wend. [N. Y.] 69, 74; Eddy v. Smith, 13 Wend. [N. Y.] 489. 'Whether the defendant could sue at law in his own name, to recover the money, or whether, having fairly got it, this action for money had and received to the plaintiff's use can be maintained, are very different questions. This is an equitable action, which may be defended upon the same equitable principles as those upon which it is maintained. As a general rule, the question is: To which

party ex aequo et bono does the money be-
long?"

Upon the same subject of the effect of the death of the
drawer upon a bill of exchange we find Mr. Daniel, in his
work on Negotiable Instruments (volume 1, § 498a), us-
ing the following language:

> "The death of the drawer is no revocation of
> a bill if it has been delivered to the payee, and
> the drawee may accept and pay it. 'The death
> of the drawer,' says Parsons, 'is no objection
> whatever to an ordinary acceptance by the
> drawer, whether with or without knowledge, for
> the death is no revocation of the bill if it has
> passed into the hands of the holder for value.'"

See, also, Cutts v. Perkins, 12 Mass. 206; Morse on
Banks and Banking, § 400.

By appellee, as we have seen, it is contended that under
the Negotiable Instruments Act (chapter 83, Laws of
1907) a check of itself does not operate as an assignment
of any part of the funds to the credit of the drawer, and
that therefore it follows, as a matter of course, that upon
the death of the depositor the bank is indebted to his es-
tate to the amount of the deposit then on its books, and
cannot therefore change its relation or its liability to the
estate, with the exception that it will be protected where
it pays without notice of the death of the depositor. This
contention arises by virtue of some confusion as to section
189 of the Negotiable Instruments Act, which, while pro-
viding that a check of itself does not operate as an assign-
ment of any part of the funds to the credit of the drawer,
is clearly designed for the protection of the bank, rather
than a provision affecting the relation between the maker
of the check and the payee. This is borne out by the fact
that the latter portion of the section provides that the
bank is not liable to the holder unless and until it accepts
or certifies the check. We find this conclusion supported
by Mr. Daniel in his work on Negotiable Instruments
(section 1643), where he says:

> "The provision of the statute [referring to ne-
> gotiable instruments statute] that a check of it-

self does not operate as an assignment of any part of the funds to the credit of the drawer with the bank is a declaration of the rule that, as against a drawee bank, a check is not an assignment of the fund. But as against the drawer the giving of a check for value on an ordinary bank deposit should be considered an assignment of the fund pro tanto."

See, also, Raesser, Adm'r, etc., v. National Exchange Bank, 112 Wis. 591, 88 N. W. 618, 56 L. R. A. 174, 88 Am. St. Rep. 979. In this case the Supreme Court of Wisconsin held that, where a bank check works an assignment pro tanto of a fund on deposit, the death of the depositor will not revoke the authority of the bank to pay a check which has been given for a valuable consideration, under circumstances which make it irrevocable as to the assignee. We believe that this statement of the law is controlling in the case under consideration, because we consider that the check given by the firm of M. B. Atkinson & Sons was an assignment pro tanto as between the maker and payee, and that section 189 of the Negotiable Instruments Act must necessarily be held to be a provision enacted for the purpose of protecting banks against loss which might be occasioned by the double payment of checks on deposit, and that its only intent and purpose is undoubtedly to protect banks only when they are acting in good faith, and not attempting to assist particular persons in the collection of their debts to the exclusion of others who are equally entitled to protection.

In the case of Hove v. Stanhope State Bank, 138 Iowa, 39, 115 N. W. 476, the Supreme Court of Iowa, in passing upon the same section on the Negotiable Instruments Code so held. See, also, section 1638, Daniel on Negotiable Instruments.

[4] We agree that this is a case to be governed by the principlpes of equity, and we cannot see that any element of mistake, fraud, or deceit is present, nor does it appear that the estate of M B. Atkinson & Sons is or was insolvent, although it is contended by appellee that such

is the case, as shown by a former case brought to this court concerning the said estate and reported as the case of Dow v. Simpson, 17 N. M. 357, 132 Pac. 568. But, even though this contention be true, we cannot take judicial notice of that fact, which is not plead in the case before us. Oliver v. Enriquez, 16 N. M. 322, 117 Pac. 844, Ann. Cas. 1913A, 140. As was stated in the case of Banks v. Burnham, 61 Mo. 76:

> "In the absence of evidence to that effect, the Supreme Court cannot take judicial notice that a case before the court had connection with one formerly decided by it."

See, also, Daniel v. Bellamy, 91 N. C. 78.

Therefore, not finding in the case under consideration those principles of equity which would make it against equity and good conscience for the appellant to retain the proceeds of the check given in good faith and for valuable consideration, we conclude that the district court was in error in rendering the judgment against appellant for such refund, which makes it necessary to reverse the judgment of the trial court to the extent such judgment is based upon the said check for $2,300.

The only remaining question for our consideration was based upon the alleged error in the trial court in the matter of its conclusion and judgment concerning the mortgage of the property of the surviving partners to secure the debt of Gross-Kelly & Co. As indicated, the surviving partners undertook to mortgage certain assets and personal property of the partnership estate, which mortgage was subsequently foreclosed by Gross-Kelly & Co., and the property sold which was the aggregate value of $793.50, which amount, with accrued interest thereupon, the trial court decreed that the appellant should account to the administrator for. Appellant, while admitting that this ruling of the trial court is based upon the recent decision of this court in the case of Dow v. Simpson, nevertheless contends that the ruling in that case was erroneous and should be now departed from. A lengthy and able argument is made in support of this contention, but we feel constrained to adhere to the rule laid down in

Dow v. Simpson. That case was ably presented to this court, in the first instance, and was reargued in a rehearing granted by the court, and while the question decided is not without its difficulties, and the argument of counsel against the rule is not without the sanction of reason, nevertheless we cannot feel that the rule should be departed from, and therefore, as admitted, the case being controlling upon this second cause of action, we are under the necessity of holding that the judgment of the trial court as to this cause of action was not erroneous, and, so far as the said judgment pertains to said cause of action, the same is necessarily affirmed.

For the reasons stated, the judgment is reversed, and the cause remanded, with instructions to enter a judgment in favor of appellee, Willie Elgin, as administrator de bonis non of the estate of M. B. Atkinson & Sons, in the sum of $909.36, with interest from the 17th day of April, 1914; and it is so ordered.

