461 P.2d 238 (1969)
80 N.M. 758
STATE of New Mexico, Plaintiff-Appellee,
v.
James W. HOLLOWELL, Defendant-Appellant.
No. 342.
Court of Appeals of New Mexico.
October 31, 1969.
Robert S. Skinner, Raton, for appellant.
James A. Maloney, Atty. Gen., Santa Fe, James V. Noble, Asst. Atty. Gen., for appellee.

OPINION
WOOD, Judge.
Convicted of violating § 40A-22-16, N.M.S.A. 1953 (Repl.Vol. 6), defendant appeals. The offense is "assault by prisoner." The issues concern: (1) lack of mental competency to stand trial; (2) a motion for continuance; and, (3) the instruction stating the material allegations of the offense.

Competency to stand trial.
Defendant asserted his incompetency to stand trial on four separate occasions. The issue concerning his competency is presented as both a constitutional and statutory matter.
Defendant was charged by criminal complaint. "Upon appearing for preliminary hearing * * * the defendant stated * * * he was not mentally competent to stand trial and requested the court to suspend all proceedings until the question as to his mental competency should be properly *239 determined. * * *" The justice of the peace denied the request and held the preliminary hearing. Defendant contends the preliminary examination should have been suspended and the cause transferred to District Court for a determination of his competency to stand trial. Section 41-13-3.1, N.M.S.A. 1953 (Repl.Vol. 6, Supp. 1969).
Defendant claimed he was incompetent a second time when he moved to quash the criminal information filed in the District Court. He asserts that the preliminary examination violated § 41-13-3.1, supra, that because of this violation the preliminary examination is void, and that he has been denied a valid preliminary examination in violation of N.M.Const. Art. II, § 14. In the alternative, he claims the holding of the preliminary examination after he asserted his lack of competency to stand trial deprived him of due process of law. See Mascarenas v. State, 80 N.M. 537, 458 P.2d 789 (1969).
Another motion asserted his incompetency for the third time. Defendant stated "* * * that he believes he is not mentally competent to stand trial. * * *" Defendant asked that all proceedings in the District Court be suspended until the issue of his competency had been determined and that he be given a mental examination before any determination as to his competency. Section 41-13-3.1, supra, and § 41-13-3.2, N.M.S.A. 1953 (Repl.Vol. 6, Supp. 1969).
Following this third assertion of incompetency, a mental examination was ordered. The examination was held less than three weeks later. The report of the examination, made to the District Judge, was to the effect that defendant was competent to stand trial and was not "insane in legal terms" when he committed the assault. Accompanying this report was a report made three months prior to the date of the assault. This report was to the effect that defendant was not psychotic.
When the case came on for trial defendant moved for a continuance. One of the grounds asserted was that he was entitled to a "sanity hearing." The trial court understood the reference to a "sanity hearing" to include an assertion that defendant was not competent to stand trial (the fourth assertion of incompetency). The trial court ruled that defendant was competent to stand trial, and denied all the motions raising the issue of defendant's competency. In doing so, it relied on the reports of two psychiatrists (the two reports previously mentioned).
Defendant states the ruling on this fourth assertion was not a determination of competency as required under §§ 41-13-3.1 and 41-13-3.2, supra. Defendant asserts that the procedure involved was inadequate; that the trial court made its determination after "* * * reviewing some unsworn medical reports and having a conversation in court with defendant, * * *"
All of defendant's contentions concerning his competency to stand trial are based on the premise that there was a "question" as to his competency. That premise is false. State v. Hovey, 80 N.M. 373, 456 P.2d 206 (Ct.App. 1969) states:
"Section 41-13-3.1, supra, requires there to be a `question' as to the accused's capacity to stand trial. The `question' is not raised by an assertion of that issue, even though the assertion is in good faith. As in the similar federal statute, there must be a showing of reasonable cause for the belief that an accused is not competent to stand trial. * * *"
Although defendant asserted his incompetency to stand trial four times, he alleged nothing, other than his own belief, in support of these assertions. Defendant did, in connection with the fourth assertion, refer to his "state of mind." This reference was as to his mental state at the time he committed the assault, some thirteen months prior to trial. It did not go to his capacity to stand trial. No question of defendant's capacity to stand trial was raised because there was no showing of reasonable cause for defendant's belief in his incapacity. *240 Compare Hoffman v. State, 79 N.M. 186, 441 P.2d 226 (Ct.App. 1968). Since the question of incompetency was not raised, no decision is necessary as to the procedure to be followed in determining whether an accused is competent to stand trial.

Motion for continuance.
Defendant asked for a continuance on the ground that he was not prepared to go to trial. At his counsel's request, and with the court's permission, defendant argued the motion personally. Defendant contends the trial court erred in denying him a continuance.
A lengthy colloquy between the court and defendant shows the motion for continuance was motivated by defendant's desire to have a "sanity hearing" prior to trial. He asked that his court appointed counsel be discharged because the attorney "* * * does not want to subpoena any witnesses for this sanity hearing, * *" "* * * I just, more or less, wanted to acquire my own attorney, so I could go through this sanity hearing first, * *."
Defendant named a long list of witnesses that he desired to call. Two categories are easily identifiable  those named as witnesses on the claim that he was incompetent to stand trial and those named as witnesses who would testify as to his "state of mind" at the time defendant committed the assault. A possible third category consists of witnesses who would testify concerning the assault itself. Thus, we construe defendant's motion for continuance to be a claim that he was not ready to proceed either with a "sanity hearing" or with the trial itself.
The reason for the asserted state of unreadiness is a lack of evidence; thus, defendant's desire to call the witnesses named. Section 21-8-10, N.M.S.A. 1953 applies. Although defendant made several references to his "state of mind" at the time he committed the assault, he never indicated what particular facts these witnesses would prove, or that he knew of no other witnesses by which such facts could be proved. Compare State v. James, 76 N.M. 376, 415 P.2d 350 (1966). Defendant simply did not present a basis for a continuance, either on the question of a "sanity hearing" or on the merits of the cause.
Defendant wanted time to attempt to retain his own counsel. This presents no independent basis for a continuance. He never represented that he could retain counsel, only that he wanted time to try to do so. Further, the desired change of counsel relates directly to his dissatisfaction with his court appointed counsel. Defendant charged that court appointed counsel was incompetent and prejudiced because of his failure to call witnesses.
In order to answer this contention, we assume, but do not decide, that a failure of court appointed counsel to call witnesses who could testify concerning pending issues would be a ground for continuance. In considering this charge we start with the trial court's statement: "* * * I know that he [counsel] is one of the most competent, qualified attorneys admitted to practice at the Bar of the State of New Mexico." Defendant does not contest this statement as a general proposition; his claim is that counsel was "* * * incompetent, * * * on this particular case, right now. * * *"
Counsel had been appointed for more than one year prior to defendant's motion. He represented defendant at the preliminary hearing. As a result of this hearing the justice of the peace refused to bind defendant over on one of the two charges brought against him. The attorney filed motions on defendant's behalf and obtained for him the mental examination referred to previously. He moved for a speedy trial with the result that the trial setting was advanced. He gave defendant prompt notice of the trial setting, corresponded with defendant about the case and conferred with him when defendant was returned from the penitentiary to Raton for the trial.
*241 Although requested by defendant, counsel refused to subpoena three of the witnesses named by defendant. He refused to do so in the exercise of his professional judgment. Compare State v. Selgado, 78 N.M. 165, 429 P.2d 363 (1967). Counsel stated he had never been advised of defendant's desire to call witnesses other than these three. Further, that he had never been advised of defendant's dissatisfaction with counsel prior to defendant's statement in court when the case was called for trial.
Defendant did not contradict any of the foregoing; he confirmed some of the items. There is nothing in the record indicating that court appointed counsel had failed to prepare for trial or had failed to call any person whose testimony would have been of benefit to the defendant.
As to defendant's "sanity", there is nothing indicating any witness could have testified as to a reasonable cause for a belief that defendant was not competent to stand trial. There is nothing indicating there was a defense of insanity at the time of commission of the assault. See § 41-13-3, N.M.S.A. 1953 (Repl.Vol. 6, Supp. 1969). The only items in the record, the reports of the mental examinations, are to the contrary. Compare Trujillo v. State, 79 N.M. 618, 447 P.2d 279 (1968).
There being nothing in the record supporting the charge that counsel had refused to call persons who could testify as to matter pertinent to defendant's case, there was no basis for a continuance. The record supports the trial court's view of defendant's motion for continuance  that the motion was an attempt to delay the trial and that defendant wanted a change in counsel in the hope that a defense might be manufactured.

Instruction stating the material allegations.
Defendant was convicted of violating that part of § 40A-22-16, supra, which reads:
"Assault by prisoner consists of intentionally:
"* * *
"B. causing or attempting to cause great bodily harm to an officer or employee of any penal institution, reformatory, jail or prison farm or ranch, * *." (Emphasis added.)
Section 40A-1-13, N.M.S.A. 1953 (Repl. Vol. 6) defines "great bodily harm" as follows:
"A. `Great bodily harm' means an injury to the person which creates a high probability of death; or which causes serious disfigurement; or which results in permanent or protracted loss or impairment of the function of any member or organ of the body;" (Emphasis added.)
The jury was instructed in accordance with these statutes. It was told that to find the defendant guilty they must determine that defendant intentionally caused or attempted to cause great bodily harm.
The assault is not disputed. Defendant, while a prisoner in the county jail, threw coffee at the Sheriff and physically fought with him. There is evidence from which the jury could determine that the coffee burned the Sheriff in two places, that defendant attempted to choke the Sheriff with one hand while attempting to get the Sheriff's gun with the other hand. There is evidence that when defendant threw the coffee he said, "`I am going to kill you,'."
Defendant concedes there is evidence from which the jury could determine that defendant attempted to cause great bodily harm to the Sheriff. His contention is that there is no evidence that defendant did, in fact, cause such harm. In support of this contention, he relies on his counsel's cross-examination of the Sheriff. The Sheriff testified that the two burned places healed and left no scar; that after the fight was over he was able to breathe normally and that he had no other injury.
Because of the asserted lack of evidence showing that defendant caused great bodily *242 harm, he claims the instruction on "causing" great bodily harm submitted a false issue to the jury, and that this false issue was prejudicial.
We agree that instructions should be confined to issues upon which testimony was given at trial. State v. Romero, 73 N.M. 109, 385 P.2d 967 (1963). However, we entertain doubt as to whether an instruction which follows the statutory language, and informs the jury that there must be proof of at least one of two alternatives, goes beyond the issue as to those alternatives even if there is no evidence as to one of them. Compare Territory v. Neatherlin, 13 N.M. 491, 85 P. 1044 (1906). Further, we are uncertain as to whether such an instruction, if error, is prejudicial when the evidence is substantial as to one of the alternatives. It might be harmless error. State v. Compton, 57 N.M. 227, 257 P.2d 915 (1953). In this case it is not necessary to decide these questions.
We decide this point on the basis of evidence which defendant overlooks. The Sheriff testified that when defendant was choking him "* * * my breath was practically cut-off. I realized instantaneously that it was he or I, one or the other. * * *" This is evidence that the choking created a "high probability of death" which is one part of the definition of great bodily harm. This is also evidence that defendant's actions caused this high probability of death. This evidence justified instructing the jury to consider whether defendant caused great bodily harm under § 40A-1-13, supra, and § 40A-22-16, supra.
The judgment and sentence are affirmed.
It is so ordered.
SPIESS, C.J., and OMAN, J., concur.