482 P.2d 242

STATE of New Mexico, Appellee,

v.

Mike ARCHULETA, Appellant.

No. 511.

Court of Appeals of New Mexico.

Dec. 31, 1970.

Rehearing Denied Jan. 21, 1971.

Certiorari Denied Feb. 22, 1971.

Anthony F. Avallone, Las Cruces, for appellant.

James A. Maloney, Atty. Gen., Justin Reid, Asst. Atty. Gen., Santa Fe, for appellee.

## OPINION

WOOD, Judge.

Convicted of twelve charges of fraud, § 40A–16–6, N.M.S.A.1953 (Repl.Vol. 6), defendant appeals. The issues discussed are: (1) whether the crimes were committed in New Mexico; (2) compelled handwriting exemplars; (3) asserted denial of a preliminary hearing; (4) denial

of a motion for bill of particulars; (5) admission of defendant's confession; (6) asserted loss of trial court jurisdiction; (7) denial of a motion to sever; (8) admission of exhibits; and (9) instructions, both given and refused.

*Were the crimes committed in New Mexico?*

Section 40A–16–6, supra, reads in part:

"Fraud consists of the intentional misappropriation or taking of anything of value which belongs to another by means of fraudulent conduct, practices or representations."

Defendant was tried on an amended information. Count I of the amended information reads:

"On or about November 14, 1968, in Dona Ana County, New Mexico, Mike Archuleta, intentionally misappropriated and took $991.10 belonging to Farmers Insurance Group by means of fraudulent conduct, practices and representations, contrary to Section 40A–16–6, NMSA, 1953 Compilation."

The other eleven counts are identical except for dates and the amounts involved.

Defendant concedes that fraud, as defined in § 40A–16–6, supra, took place. We quote from the brief in chief a general outline of the fraud:

"From the proof adduced, the defendant had possession of blank loss drafts of the Farmers Insurance Group. He had authority to sign those drafts and deliver them to either insureds with claims or body shops performing work. * * The files of the Farmers Insurance Group maintained in Colorado Springs, Colorado, contained papers supporting claims submitted by the defendant. * * However, the claims were false."

It is defendant's contention that the fraud was not committed in New Mexico. It is undisputed that each draft issued by defendant in payment of the false claims was drawn on a bank in Colorado Springs, Colorado, and was paid by that bank when presented. Defendant contends the misappropriation or taking occurred when the checks were paid and this was in Colorado, not New Mexico.

Defendant relies on State v. Faggard, 25 N.M. 76, 177 P. 748 (1918). There it was charged that Faggard had an arrangement with a St. Joseph, Missouri company by which Faggard would purchase cattle in Eddy County, New Mexico, and mortgage them to the Missouri company in an amount sufficient to finance the purchase. This was to be done by a draft on the company. Attached to the draft was to be a bill of sale for the cattle and Faggard's promissory note and mortgage. It was charged that Faggard did draft on the company pursuant to the arrangement but attached a bogus bill of sale and executed a chattel mortgage on non-existent cattle. The charge against Faggard was obtaining money by false pretenses. The opinion states:

"* * * if the St. Joseph Cattle Loan Company parted with its money in Eddy county, then the venue was properly laid in that county; on the other hand, if the money was parted with in St. Joseph, Mo., then the venue was there. The law is that a crime must be prosecuted in the jurisdiction where it is committed, and a prosecution for criminal false pretenses must be had in the county, district, or state where the offense was consummated by the obtaining of the property, even though the inducing pretenses were made elsewhere, and the consummation by delivery of the property was effected through the instrumentality of an innocent agent, without the personal presence of the principal." (Citation omitted)

Seeking to avoid State v. Faggard, supra, the State relies on § 40A–1–15, N.M.S.A. 1953 (Repl.Vol. 6). According to the State, § 40A–1–15, supra, "* * * shows a legislative intent to give jurisdiction over a crime to the court of a county 'in which a material element of the crime was committed.'" The language is taken out of

context. The material portions of § 40A–1–15, supra, read:

"  *  *  *  In the event elements of the crime were committed in different counties, the trial may be had in any county in which a material element of the crime was committed. In the event death results from the crime, trial may be had in the county in which any material element of the crime was committed, or in any county in which the death occurred. In the event that death occurs in this state as a result of criminal action in another state, trial may be had in the county in which the death occurred. In the event that death occurs in another state as a result of criminal action in this state, trial may be had in the county in which any material element of the crime was committed in this state."

The appeal does not involve a situation where material elements of a crime were committed in different counties within New Mexico. Section 40A–1–15, supra, applies only in a limited sense to a situation where a material element of the crime occurs outside New Mexico—where death is involved. Section 40A–1–15, supra, does not cover the contention advanced by defendant. Compare State v. Harrington, 260 A.2d 692 (Vt.1969); People v. Zayas, 217 N.Y. 78, 111 N.E. 465 (1916).

Since § 40A–1–15, supra, is not applicable to defendant's contention, we do not avoid State v. Faggard, supra. Rather, we apply the *Faggard* statement that prosecution for the crime must be in the state where the offense was consummated. The consummation of defendant's fraud occurred at the place where defendant misappropriated or took money belonging to Farmers Insurance Group. Defendant's contention that the misappropriation or taking did not occur until the drafts were paid in Colorado directs attention to only one portion of the transaction; it ignores what defendant had done previously. Specifically, it ignores the fact that defendant issued the drafts.

Throughout the proceedings the instruments issued by defendant in payment of the false claims were referred to as both checks and drafts. At one of the hearings where defendant sought a bill of particulars, the State made it clear that it was relying on these instruments. A charge of misappropriation of money may be established by a showing that drafts or checks were misappropriated. Section 41–6–21, N.M.S.A.1953 (Repl.Vol. 6); State v. Peke, 70 N.M. 108, 371 P.2d 226 (1962).

Two New Mexico cases support the view that defendant misappropriated the drafts or checks (the money) when he issued them in Dona Ana County, New Mexico.

The maker of a check died after the check was delivered to the payee but before it had been paid by the bank on which the check was drawn. There was nothing showing that either the bank or the payee had notice of the maker's death at the time the bank paid the check. The administrator of the maker's estate sued the payee for the amount of the check, claiming the bank's authority to pay the check was revoked upon the death of its maker. In Elgin v. Gross-Kelly & Co., 20 N.M. 450, 150 P. 922, L.R.A.1916A, 711 (1915), it was held that upon issuance of a check for value there was an assignment pro tanto of the funds of the drawer on deposit in the bank on which the check was drawn. The fact that the check was for value was material as to the issues between the parties. *Elgin* recognizes that under the statute then existing [the present statute is § 50A–3–409, N.M.S.A.1953 (Repl.Vol. 8, pt. 1) ], there was no assignment so far as the depository bank was concerned. However, as between the maker and the payee, there was such an assignment.

Here, as between the State and a defendant who had authority to issue the drafts, defendant made a pro tanto assignment of funds of Farmers Insurance Group when he issued the drafts. That assignment was a misappropriation of funds on which he was authorized to draw.

The second case is Territory v. Hale, 13 N.M. 181, 81 P. 583 (1905). The defendant was charged with embezzling funds of Mora County. The funds were on deposit in a bank in San Miguel County. The opinion approves the view that the " * * embezzlement is accomplished by the drawing of a check upon a bank where such money is deposited." (Citations omitted)

An issue in Territory v. Hale, supra, was where the embezzlement occurred. The opinion states:

> " * * * every act of the defendant in connection with the crime charged was performed in Mora county * * *. He drew the checks there, and either sent them by mail or delivered them personally to the respective payees. All things which were afterwards done were the result of instrumentalities which he, in Mora county, had set in motion. * * , *

Although the checks were paid in San Miguel County, the opinion states " * * the crime was clearly committed in Mora County * * *."

Although the funds of Farmers Insurance Group were on deposit in a bank in Colorado, under Territory v. Hale, supra, the misappropriation occurred when defendant issued the drafts.

Finally, under this issue, it is pointed out that § 40A–16–6, supra, requires a misappropriation or taking of a thing of value which belongs to another. The suggestion is that although the misappropriated drafts were a thing of value, they were not the property of Farmers Insurance Group. The reasoning is that the drafts indicated an obligation owing by Farmers Insurance Group, that such an obligation belongs to the creditor and not the debtor. Under this view, no property was misappropriated until the drafts were paid in Colorado.

One answer to this contention is that the drafts at the time of issuance, did not represent any indebtedness on the part of Farmers Insurance Group. The evidence shows that the drafts were issued in payment of false claims. There was no credi-

tor when the drafts were issued. A second answer is that under Elgin v. Gross-Kelly & Co., supra, funds of Farmers Insurance Group were assigned when the drafts were issued. A third answer; under Territory v. Hale, supra, is that the misappropriation occurred when drafts were issued. Whose drafts? Those of Farmers Insurance Group. Those drafts represented money. The misappropriation was of property belonging to Farmers Insurance Group.

We hold that defendant misappropriated drafts of Farmers Insurance Group in Dona Ana County, New Mexico, that those drafts were things of value and that the crimes were committed in New Mexico. Compare Commonwealth v. Welch, 345 Mass. 366, 187 N.E.2d 813 (1963).

*Compelled handwriting exemplars.*

Over defendant's objection, the trial court ordered defendant to furnish handwriting "exemplars and samples."

Defendant contends that the order, which he obeyed only after being cited to show cause why he should not be held in contempt, violated his privilege against self-incrimination. Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 (1967), held that a handwriting exemplar, in contrast to the content of what is written, like the voice or the body, is an identifying physical characteristic outside the protection of the privilege against self-incrimination. We have examined the exemplars. Their content was neither testimonial nor communicative matter; they were handwriting samples only. Defendant's privilege against self-incrimination was not violated by furnishing the exemplars.

Defendant also contends that the trial court had no authority to require him to furnish the exemplars, that in ordering him to do so the court forced defendant to become a witness against himself. This contention goes to the fact that defendant was compelled to furnish the exemplars. Since the exemplars themselves did not violate his constitutional privilege, the com-

pulsion in furnishing the exemplars also did not violate the privilege. Compare Breithaupt v. Abram, 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957), where, in discussing the taking of a blood sample from an unconscious person, it is stated: "* * * the absence of conscious consent, without more, does not necessarily render the taking a violation of a constitutional right; * * *" As stated in Lewis v. United States, 127 U.S.App.D.C. 269, 382 F.2d 817 (1967), cert. denied 389 U.S. 962, 88 S.Ct. 350, 19 L.Ed.2d 377 (1967): "* * * Appellant's writing could have been compelled on pain of contempt at any stage after he was before the Court." That was what was done here. There was no error in compelling the defendant to furnish the exemplars.

*Denial of a preliminary hearing.*

Since defendant was charged by an information, he had a constitutional right to a preliminary examination. N.M.Const., art. II, § 14. Defendant had a preliminary examination and was bound over to district court. An information was filed. Defendant attacked the sufficiency of the information. Apparently as a result of this attack an amended information was filed. Defendant was tried on the basis of this amended information.

After the filing of the amended information, and prior to trial, defendant moved that the trial court order another preliminary examination. Defendant's argument to the court in support of this motion shows that he wanted to obtain more knowledge as to the State's theory of the ownership of the property defendant had allegedly obtained by fraud. The trial judge indicated from the bench that defendant had had an adequate preliminary hearing but that defendant could properly have a further preliminary examination as to the ownership of the money. We note, however, that no preliminary examination was ordered. Instead, a witness was called to the stand, sworn, and testified concerning the ownership of the money.

In spite of this unusual procedure, acquiesced in by defendant, he now claims that he was entitled, under our constitution, to another preliminary examination because of the amended information. We do not decide this issue on the basis of the procedure followed. Rather, we consider the relationship of the preliminary examination to the amended information on which defendant was tried.

What is the purpose of a preliminary hearing? State v. Garcia, 79 N.M. 367, 443 P.2d 860 (1968), states:

"* * * The preliminary hearing is to determine whether a crime has been committed, the connection the accused has with it thereby informing him of the nature and character of the crime charged, to perpetuate testimony, and to establish bail, if the offense is bailable." (Citations omitted)

No issue is raised as to the sufficiency of the preliminary examination on the "* * * charge that was placed before the magistrate." In arguing to the trial court for an additional preliminary examination, defendant agreed that the preliminary hearing concerned § 40A–16–6, supra, and that the amended information involved the same section.

It appearing that defendant had a preliminary examination on the charge brought by the amended information, defendant's constitutional right to a preliminary examination was not denied. State v. Melendrez, 49 N.M. 181, 159 P.2d 768 (1945); State v. Vasquez, 80 N.M. 586, 458 P.2d 838 (Ct.App.1969). In *Melendrez* and *Vasquez* there was an issue as to the conformity between the preliminary proceedings and the information. No such issue exists here; the preliminary hearing and the amended information pertained to the same statutory charge. Considering the purpose of a preliminary hearing, defendant's effort to obtain additional discovery of the State's case through a second preliminary hearing had no constitutional basis.

*Denial of motion for bill of particulars.*

Defendant's motion for a bill of particulars as to the amended information was denied. He claims that this denial deprived him of due process of law. He asserts that the information sought by the motion was to enable him to prepare an adequate defense, and inferentially contends that by denial of the motion he could not properly prepare his defense.

State v. Mosley, 75 N.M. 348, 404 P.2d 304 (1965), states:

> "The object of a bill of particulars in criminal cases is to enable the defendant to properly prepare his defense, State v. Graves, 73 N.M. 79, 385 P.2d 635, and, to achieve that fundamental purpose, it must state as much as may be necessary to give the defendant and the court reasonable information as to the nature and character of the crime charged, State v. Roy, 40 N.M. 397, 60 P.2d 646, 110 A.L.R. 1. However, the district attorney is not thereby required to plead evidence, * * *"

Section 41–6–8(2), N.M.S.A.1953 (Repl. Vol. 6), provides that in determining what facts should be furnished the defendant "* * * the court shall consider the whole record and the entire course of the proceedings against the defendant." The trial court did consider the record and the course of proceedings. This included a transcript of the preliminary hearing consisting of 172 pages plus 11 exhibits. The court asked defendant what information he desired that was not included in the record of the preliminary hearing. Defendant never directly answered the court's question. Instead, his response shows that what defendant sought was the details of the evidence on which the district attorney would rely.

■ Thus, there are two answers to this issue. First, while the record of the preliminary hearing is not before us, nevertheless the trial court was of the opinion that the preliminary hearing transcript afforded reasonable information as to the nature and character of the crime charged. Nothing in the record before us shows the view of the trial court to be in error. Second, the record does show that defendant sought to require the district attorney to plead evidence. He was not required to do so. State v. Mosley, supra. There was no error in denying the motion for a bill of particulars.

*Admission of defendant's confession.*

Defendant's written statement was admitted into evidence over his objection. The statement was, in effect, a confession as to several of the counts. Defendant was not given the warnings set forth in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966) before making the statement. Defendant claims error in the admission of the statement because of the absence of the *Miranda* warnings.

*Miranda* states:

> "* * * the prosecution may not use statements, * * * stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way. * * *"

See also, Orozco v. Texas, 394 U.S. 324, 89 S.Ct. 1095, 22 L.Ed.2d 311 (1969).

The above quotation shows that the prohibition on the use of statements, obtained when the *Miranda* warnings were not given, applies to statements made to law enforcement officials as the result of custodial interrogation.

■ Defendant's statement was not obtained by law enforcement officers nor was it obtained as the result of a custodial interrogation. Defendant made his statement to employees of Farmers Insurance Group who had been directed by their superior to investigate claims submitted by defendant. Defendant attempted to show that the Farmers Insurance Group em-

ployees, to whom he made the statement, were agents of or acting on behalf of the district attorney. His attempt was unsuccessful. There is no evidence that the employees who took the statement were agents of or acting on behalf of the district attorney. Even though the *Miranda* warnings were not given, the trial court did not err in admitting defendant's statement.

*Asserted loss of jurisdiction.*

State v. Vaughn, 74 N.M. 365, 393 P.2d 711 (1964) holds that the jurisdiction of the trial court in a criminal case may be lost by failure of the trial court to remand for a preliminary examination when its absence is timely brought to the attention of the district court. Generalizing from State v. Vaughn, supra, defendant asserts that defendant was deprived of his constitutional rights, that as a result of this alleged deprival the trial court lost jurisdiction and that the charges against defendant should be dismissed.

Even if we assume that defendant's generalization is correct, there still is no merit to the contention. The constitutional rights which defendant claims were denied have been discussed. There was no denial of constitutional rights in the claims presented; therefore, no basis for defendant's contention.

*Denial of the motion to sever.*

For purposes of trial, defendant moved that each of the twelve counts be severed. Relying on State v. Paschall, 74 N.M. 750, 398 P.2d 439 (1965), defendant claims the trial court erred in denying the motion to sever. State v. Paschall, supra, seems to indicate that where the various crimes charged were in the execution of a general fraudulent scheme, joinder of the charges for trial purposes is proper. That is the situation here. The dates involved in the counts extend from September 7, 1968 to January 21, 1969. The method of defendant's operation in each count was identical. In each instance it was the property of Farmers Insurance Group that was misappropriated or taken. In our opinion,

State v. Paschall, supra, supports the trial court's action in denying the motion.

Further, the decisions are to the effect that there is no automatic rule to be applied by the trial court in ruling on a motion for severance. The trial court must consider the danger of prejudice to defendant, but also must consider problems which would result from a severance. Specifically, the trial court must consider the special circumstances of each case and in the exercise of its discretion, sustain or deny the motion. The trial court's ruling will be sustained on appeal unless an abuse of discretion is shown which results in prejudice to the defendant. State v. Brewer, 56 N.M. 226, 242 P.2d 996 (1952); State v. Sero, 82 N.M. 17, 474 P.2d 503 (Ct.App. 1970); State v. Gunthorpe, 81 N.M. 515, 469 P.2d 160 (Ct.App.1970).

Here, defendant claims prejudice because the confession related to four of the counts and "its spreading effect is obvious." Since there was evidence of the false claims under each of the counts, we do not agree that it was "obvious" that defendant was prejudiced by the failure to sever the four counts identified in the confession from the other counts. In addition, this claim was not presented to the trial court; there, defendant contended that each of the counts should be severed. Accordingly, this claim is not before us for review. See State v. Harrison, 81 N.M. 324, 466 P.2d 890 (Ct.App.1970).

On the claim that was presented to the trial court, we hold that defendant has not shown prejudice from denial of the motion to sever.

*Admission of exhibits.*

Seventy-four exhibits, taken from the records of Farmers Insurance Group, were admitted over defendant's objection. Defendant claims that a foundation for admissibility had not been laid under business records act. Section 20–2–12, N.M. S.A.1953 (Repl.Vol. 4). The record shows, however, that such a foundation was laid.

Defendant also claims the exhibits should not have been admitted because their relevancy was not established. To the trial court he asserted: "* * * until there has been a basis established that relates that [the business records] to the defendant, the papers themselves are irrelevant." The exhibits were documents submitted by defendant to Farmers Insurance Group. The exhibits were grouped as to each of the counts, as to each group of papers there was testimony that they were received from defendant. At least one paper in each group bore the signature of defendant. The record fully establishes relevancy.

*Instructions—given and refused.*

Defendant's attack on the instructions given and refused, and our answers, follow.

(a) Instructions given.

(1) Instruction 4 stated the material allegations of each count which the State was required to establish beyond a reasonable doubt before defendant could be found guilty as to that count. Defendant claims the instruction was "confusing" because it referred to venue, identified the crime charged as a felony and stated that the crime could be committed by either a misappropriating or a taking. We see no "confusion" in telling the jury the crime must have been committed in Dona Ana County, see N.M.Const., art. II, § 14, or in identifying the crime charged as a felony, see § 40A–16–6, supra. No objection was raised to the trial court concerning charging in the alternative as to misappropriating or taking; therefore, it will not be considered. State v. Hatley, 72 N.M. 280, 383 P.2d 247 (1963). However, as to the propriety of the alternative instruction, see State v. Hollowell, 80 N.M. 756, 461 P.2d 238 (Ct.App.1969).

(2) Instruction 7 defined "anything of value." Defendant objected that this term was "* * * nowhere included in the case since the Information relates to sums of money, * * *" He claimed that the instruction introduced the idea that a draft is a thing of value. Accepting defendant's interpretation of the instruction, the instruction was proper. Section 40A–16–6, supra, refers to "anything of value" and we have previously pointed out that a draft may be considered as money.

(3) Instruction 14 defined an "aider or abettor." Defendant objected, claiming that any question of defendant being an aider or abettor was beyond the issues of the case. He is not correct. The evidence implicates others in the various counts of fraud and fairly raises the question of whether defendant was an aider or abettor.

(4) Instruction 15 pertained to circumstantial evidence. Defendant's objection to this instruction is that another instruction on circumstantial evidence, requested by the State and adopted by defendant as one of his requests, should have been given. Instruction 15 informed the jury that it could consider both direct and circumstantial evidence in deciding the case. It was a proper instruction. As the other instruction defined circumstantial evidence, it would not have been error to have given it in addition to instruction 15. However, that is not what the defendant requested of the trial court. Defendant wanted the other instruction given and wanted the court not to give instruction 15. Thus, since instruction 15 was a correct instruction, the court properly refused to substitute the other instruction in place of instruction 15.

(5) Instruction 17 told the jury, generally, that neither the prosecution nor the defense were required to call as witnesses all persons who were shown to have been present at any of the events involved and that neither side was required to produce all the exhibits that may have been referred to or suggested by the evidence. Up to this point, defendant had no objection to

the instruction. On the basis of the foregoing generalized statement, the last sentence of the instruction told the jury not to favor or prejudice either party because of the failure of either party to call a witness or produce an exhibit.

■ Defendant contends the last sentence of the instruction is an incorrect statement of law. He claims the jury could draw an inference unfavorable to the State because of the State's failure to call as a witness the payee named in the drafts issued by defendant. Even if such an inference is proper, a point we do not decide, such an unfavorable inference could not be drawn in this case because the basis for drawing such an inference is not in the record. See State v. Soliz, 80 N.M. 297, 454 P.2d 779 (Ct.App.1969). Since defendant's objection was incorrect as a matter of law, the trial court did not err in giving the instruction over the objection made to it. Further, the last sentence was proper in the light of the part of the instruction to which defendant had no objection.

(b) Instructions refused.

■ (1) Four of the refused instructions were on the theory that defendant could not be convicted unless defendant misappropriated or took money from Farmers Insurance Group in Dona Ana County. As used in these requested instructions, money meant dollars and cents. At least twice in this opinion we have pointed out that money included the drafts. Defendant improperly sought to limit the meaning of money by these requested instructions.

■ (2) Neither side requested an instruction as to voluntariness of defendant's confession and the jury was not generally instructed as to how they were to treat the confession. However, defendant requested two instructions which pertained to the confession. One would have told the jury not to consider the confession unless they found a crime had been committed in Dona Ana County. The other would have told the jury they were not bound to believe the confession solely because the court had ruled it to be admissible. Defendant's objection to the refusal of these two instructions was that they " * * * are correct statements of the law and are not otherwise covered in these instructions."

We do not discuss the obvious incompleteness of the two requests in failing to inform the jury as to how they were to consider the confession. We do not do so because the issues to which they were directed were adequately covered by instructions given. As to where the crimes were committed, the material elements of the crimes were defined and the jury was told the proof, beyond a reasonable doubt, must be that these elements were committed in Dona Ana County. Concerning what the jury was to believe, the jury was instructed they were the sole judges of the facts, they were to determine the credibility of the witnesses, and it was for them to determine what part of the evidence was true. It was not error to refuse the two requests which attempted to apply the concept of the general instructions to a particular item of evidence—the confession. See State v. McFerran, 80 N.M. 622, 459 P.2d 148 (Ct. App.1969).

The judgment and sentence as a result of the convictions is affirmed.

It is so ordered.

HENDLEY, J., concurs.

SPIESS, Chief Judge (dissenting).

I am unable to agree that the New Mexico court had jurisdiction of the offence involved here. The statute, § 40A–16–6, N.M.S.A.1953, creates an offence denominated "FRAUD." Fraud is defined by the Act as consisting of " * * * the intentional misappropriation or taking of anything of value which belongs to another by means of fraudulent conduct, practices or representations."

**388**

The jurisdictional question here is, "Where was the property obtained?" The facts are undisputed. Defendant falsely represented the existence of liabilities of his employer, Farmers Insurance Exchange, and drew drafts in payment of such nonexistent liabilities upon his employer payable at a bank located in Colorado. These drafts were delivered to a New Mexico bank to be presented for payment in Colorado and the drafts were honored in Colorado. The New Mexico bank was defendant's agent in effecting collection. § 50A–4–201, N.M.S.A.1953. Consequently, the money was obtained in Colorado by defendant's agent, the New Mexico bank.

In my opinion, it is settled that the prosecution for obtaining property by false pretenses must be laid in the jurisdiction where the offence was consummated by the obtaining of the property. State v. Faggard, 25 N.M. 76, 177 P. 748 (1918); Updike v. People, 92 Colo. 125, 18 P.2d 472 (1933); Connor v. State, 29 Fla. 455, 10 So. 891 (1892); Graham v. People, 181 Ill. 477, 55 N.E. 179 (1899); State v. Smith, 162 Iowa 336, 144 N.W. 32 (1913); State v. Simone, 149 La. 287, 88 So. 823 (1921); Bates v. State, 124 Wis. 612, 103 N.W. 251 (1905); State v. Devot, 66 Utah 319, 242 P. 395, 43 A.L.R. 532 (1925); See Anno. 43 A.L.R. 545.

In my opinion the majority view would be sustainable had New Mexico, by an appropriate statute, provided for the punishment of a person committing a crime in whole or in part within the state. See People v. Zayas, 217 N.Y. 78, 111 N.E. 465 (1916); State v. Moore, 189 Wash. 680, 66 P.2d 836 (1937).

While it is apparent that a crime was committed, in my opinion it was not committed against the State of New Mexico and the courts of this state, consequently, had no jurisdiction to try the defendant, or impose sentence upon him.

I, accordingly, respectfully dissent.